**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Duane WATTS, Defendant-Appellant.**

**No. 74–1312.**

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 20, 1975.

Decided March 17, 1975.

Holloway, Circuit Judge, concurred in result and filed opinion.

James L. Treece, U. S. Atty., and Robert R. Marshall, Asst. U. S. Atty., Denver, Colo., for appellee.

Irvin L. Mason, Durango, Colo., for appellant.

Before SETH, HOLLOWAY, and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Duane Watts (Watts) appeals from the Trial Court's judgment finding him

guilty of involuntary manslaughter and adjudging him to be a Juvenile Delinquent under the provisions of the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031–5037.

Watts, an Indian and a minor aged 17 at the time of the alleged offense, was initially charged by complaint with the offense of murder arising from the stabbing death of his brother, Calvert Watts. He was thereafter indicted for voluntary manslaughter. Subsequently, upon failure of the United States Department of Justice to consent to Watts' being charged as an adult, and with the consent of Watts and his counsel, the prior indictment was dismissed and an Information, charging Juvenile Delinquency-Manslaughter, was filed. At trial Watts attempted, unsuccessfully, to establish that he had acted in self defense in stabbing his brother during an altercation.

On this appeal Watts contends: (1) that his right to due process was violated by reason of the failure of adequate notice being provided to his parents; and (2) that the Trial Court erred in allowing the prosecution to make use of grand jury proceedings against him.

I.

Watts' chief allegation, i. e., that he was denied due process because his parents were not given notice of the charges against him, nor were they advised of his right to counsel, etc., is premised solely upon the Supreme Court's landmark decision in In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). While Watts baldly claims that the federal courts have consistently followed the Supreme Court's mandate in this regard, he has cited no cases squarely holding on this point, nor have we, through our own research, uncovered any such authority. The question of whether the failure of notice to a juvenile's parents, standing alone, constitutes sufficient grounds for the reversal

of a determination of juvenile delinquency under the Federal Act, we find to be of first impression before this court.

In establishing standards for the type of notice which would comport with due process requirements for juvenile delinquency proceedings, the Court in *Gault* held:

Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must "set forth the alleged misconduct with particularity." . . . even if there were a conceivable purpose served by the deferral proposed by the court below, it would have to yield to the requirements that the child *and his parents* or guardian be notified, *in writing*, of the specific charge or factual allegations to be considered at the hearing, and that such written notice be given at the earliest practicable time, and in any event sufficiently in advance of the hearing to permit preparation. Due process of law requires notice of the sort we have described—that is, notice which would be deemed constitutionally adequate in a civil or criminal proceeding. It does not allow a hearing to be held in which a youth's freedom and *his parents' right to his custody* are at stake without giving *them* timely notice, in advance of the hearing, of the specific issues that they must meet. (Emphasis supplied).

387 U.S. at 33–34, 87 S.Ct. at 1446.

While *Gault, supra*, dealt specifically with the constitutionality of a state scheme for juvenile proceedings, the rights enumerated by that decision are based upon protections afforded by the United States Constitution and, consequently, we view them to be equally applicable to federal proceedings dealing with juvenile offenders under the Federal Juvenile Delinquency Act.[1]

---

1. While the U.S. Attorney correctly pointed out in his brief that at the time of these proceedings the Federal Act did not require that notice be given to the juvenile's parents, we

deem it significant to note that such a requirement has been included in a recent amendment to that Act. Section 503 of the Juvenile Justice and Delinquency Prevention Act of

Although the express language in *Gault* requiring that notice be given to both the juvenile and his parents is unequivocal, we are not convinced that the failure of such notice to the parents must lead in all cases to the automatic reversal of the juvenile's adjudication as a delinquent.

Our review of the decision in *Gault* and our search of other authorities does not convince us that there exists a separate and independent due process right to notice of delinquency proceedings belonging to the parents of the juvenile defendant, Watts.[2] However, because the parents are not parties to the present action we need not now decide whether such a right exists, and if so whether it has been violated. Further, we do not and need not decide what remedy may be available or appropriate.

■ Instead, our concern on this appeal is solely with whether a violation of the standard established in *Gault* requiring that notice be given to a juvenile's parents constitutes such a deprivation of the *juvenile's right* to due process as to, per se, require a reversal of the determination of his delinquency.

Preliminarily, we note the following language from the Supreme Court's recent decision in Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725

1974 (P.L. 93–415; 88 Stat. 1109) amended Section 5033 of Title 18 U.S.C. to read:

> Whenever a juvenile is taken into custody for an alleged act of juvenile delinquency, the arresting officer shall immediately advise such juvenile of his legal rights . . . and shall immediately notify the Attorney General and *the juvenile's parents,* . . . of such custody. The arresting officer *shall also notify the patents,* . . . *of the rights of the juvenile and of the nature of the alleged offense.* (Emphasis added).

We further note the implicit recognition by the Congress that from the time of the decision in *In Re Gault,* the Federal Juvenile Delinquency Act has been deficient in providing for those safeguards which the court there mandated:

> Finally, it is necessary to amend the Federal Juvenile Delinquency Act to guarantee certain basic procedural and constitutional protections to juveniles under Federal jurisdiction. The Committee believes that the Act should provide for the unique characteristics of a juvenile proceeding and the constitutional safeguards fundamental to our system of justice. Six years after the Supreme Court in *In Re Gault,* decried the lack of certain due process protections in juvenile proceedings, *the Federal Juvenile Delinquency Act has not been changed to reflect those due process rights.* (Emphasis added).

Senate Report No. 93–1011; 1974 U.S.Code Cong. and Admin.News, p. 5312 (October 15, 1974).

2. In this regard, we note that while parents must be given notice in proceedings wherein custody is at stake, Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), and while the Court in *Gault* spoke in terms of the "interest" of parents in retaining custody of the juvenile as partial justification for their being given notice, we also take notice of certain distinctions between this case and those

in which the right to notice has been clearly afforded parents. For example, unlike custody proceedings between divorced parents, or those in which the state is attempting to take custody from parents on charges of nonsupport, etc., here there is no direct attack upon the parents' right to custody. Rather, any effect upon custody is purely incidental to the main function of the proceedings, i. e., to determine delinquency. Secondly, any deprivation suffered by parents following a delinquency proceeding will not necessarily be in the nature of a permanent deprivation of all parental rights, as is relied upon as justification for notice in *Armstrong, supra.* We further observe that the due process standards set forth in *Gault* (including the right to notice) were specifically held to apply only to that part of the juvenile proceedings in which *delinquency* is determined and not to that stage of the proceedings in which the *disposition* of the delinquent child is at issue, *Gault, supra,* 387 U.S. at 27, 87 S.Ct. 1428. It is only at this latter stage that the matter of custody is actually determined. It would therefore seem that any right to notice belonging to the parents based upon the contention that custody is at stake would be applicable, if at all, only to this latter stage of the proceedings, and hence, *Gault* would not seem to be a reliable authority for a claim of such right.

Finally, we recognize that there are several cases holding that the Federal Constitution does not require that a minor's parents be notified prior to the commencement of criminal proceedings against him (even though, presumably, "custody" of the child is as much at stake in those proceedings as it is in delinquency proceedings). *See,* Adams v. Wainwright, 445 F.2d 832 (5th Cir. 1971), cert. denied 404 U.S. 860, 92 S.Ct. 160, 30 L.Ed.2d 103 (1971); Holloway v. Wainwright, 451 F.2d 149 (5th Cir. 1971).

(1975), which concerned the type of due process notice which must be given students prior to their suspension:

> . . . the interpretation and application of the Due Process Clause are intensely practical matters and . . "the very nature of due process *negates any concept of inflexible procedures universally* applicable to every imaginable situation." Cafeteria Workers v. McElroy, 367 U.S. 886, 895 [81 S.Ct. 1743, 6 L.Ed.2d 1230] (1961). (Emphasis added).

419 U.S. at 578, 95 S.Ct. at 738.

Similarly, we find applicable the Court's statement in *Gault* that the due process standards established therein are to be "intelligently and not ruthlessly administered." 387 U.S. at 21, 87 S.Ct. 1428.

In Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), the Supreme Court recognized that certain procedural safeguards (in that case the *Miranda* warnings) were not themselves rights protected by the Constitution but were, instead, prophylactic measures laid down to insure that basic rights were not violated. This being so, where only the prophylactic safeguard has been violated but the basic right has not, reversal is not necessarily required.

■ In Holloway v. Wainwright, *supra,* the Court stated that the purpose underlying statutes requiring notice to parents is to "furnish a safeguard to minors accused of crimes by requiring that the opportunity be made available for consultation and advice with the individuals, who, society must assume, are those most vitally concerned with the minor's best interests." 451 F.2d at 151. The basic right protected by such safeguards is that of the child to be made aware of the charges against him and to be assured a reasonable opportunity to prepare his defense. Kemplen v. State of Maryland, 428 F.2d 169 (4th Cir. 1970). In this regard, the parents' function would seem to be similar to that of legal counsel.

Watts has made no contention that he was not made fully aware of the charges against him or that he was in any way prejudiced in preparing his case due to the failure of notice being given to his parents. There is no allegation here that Watts was denied the opportunity to confront and cross-examine all adverse witnesses or to secure the presence of favorable witnesses or present evidence in his own defense. Unlike the factual situation in *Gault*, the record here reveals that Watts himself had adequate written notice of the precise charges against him well in advance of the hearing and was at all material times represented by competent counsel.[3] Furthermore, Watts' mother and his stepfather were obviously available to assist him with his defense, as evidenced by the fact that they were present at trial and testified in his behalf.

■ We do not intend hereby to condone the Government's failure to notify, or even attempt to notify, the juvenile's parents. Such notification may often be the only practical method of insuring that a juvenile is accorded fundamental due process rights mandated by In Re Gault. Where, as here, however, it is clear that the juvenile has not, *in fact*, been *denied due process* (even though there has been a technical violation of a prophylactic safeguard established to protect that right), we see no need for a per se rule requiring reversal. *Cf.*, In Re State in Interest of Harrell, 254 La. 963, 229 So.2d 63 (1969).

The law cannot realistically require that officers investigating serious crimes make no errors whatsoever, and before such error will be penalized it must be determined that such sanction serves a valid and useful purpose. Michigan v. Tucker, *supra.* There is no allegation here that the investigating officers' fail-

---

**3.** We are not unmindful of the fact that Watts' own counsel presumably had it within his own power to notify the juvenile's parents had he felt strongly that his client would have been materially benefited by their being so informed. His failure to do so may have been a trial tactic to preserve technical error.

ure to notify Watts' parents was willful.[4] Further, there has been no showing made that the Government's case was in any way enhanced by its failure to supply such notice. A "deterrence" argument is not, therefore, applicable here. Nor are we convinced that a reversal, under the circumstances presented by this case, would in anywise enhance the "fact finding process." *See*, McKeiver v. Pennsylvania, 403 U.S. 528, 543, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).

Finally, we agree with the conclusion of the District Court in Walker v. State of Florida, 328 F.Supp. 620 (S.D.Fla. 1971), aff'd. 466 F.2d 485 (5th Cir. 1972):

> *Gault* established that in "loss of liberty proceedings" the juvenile, with respect to certain constitutional rights, is to be treated as an adult. . . . No more was required, no less was offered.
>
> 328 F.Supp. at 624.

Under the total circumstances of this case, we agree with the conclusion of the trial court and hold that Watts was not denied the fundamental "fair treatment" mandated by *In Re Gault*.

## II.

■ Watts next asserts error in that the trial court permitted the prosecutor to use grand jury proceedings against him. The basis of this allegation rests upon Watts' unsupported contention that the Government, in attempting to impeach two of its witnesses, *may* have relied upon transcripts of their prior testimony before the grand jury. He asserts that such use amounted to a subversion of criminal procedure and requires reversal, citing United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

The Government contends that it did not use grand jury transcripts to impeach these witnesses, but rather relied upon statements made by these witnesses to the investigating authorities on the night of the incident. Suffice it to say that if such statements were made to the investigating officers (which Watts does not dispute), they could have been properly used to impeach these witnesses' testimony. In light of this, we see no possibility of prejudicial error to Watts even if these same, or similar, statements were also transcribed during the grand jury proceedings and hence thereby were independently available to the Government from another, perhaps tainted, source. Rule 52(a) Fed.R. Crim.P., 18 U.S.C.; Jennings v. United States, 364 F.2d 513 (10th Cir. 1966), cert. denied 385 U.S. 1030, 87 S.Ct. 760, 17 L.Ed.2d 677 (1967); Gay v. United States, 322 F.2d 208 (10th Cir. 1963).

We affirm.

HOLLOWAY, Circuit Judge (concurring in result):

I concur fully in Part II of the court's opinion. As to Part I, I agree with the result reached but am unable to agree with the analysis of the due process requirements laid down by In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527. I cannot agree that the failure to give notice to the parents may be viewed a mere technical violation of a prophylactic safeguard, and not a constitutional infringement.

The Supreme Court spoke in plain terms of the due process requirements involved in *Gault*, 387 U.S. 1, 33, 87 S.Ct. 1428, 1446, 18 L.Ed.2d 527. The Court recognized the requirements that:

> the child and his parents or guardian be notified, in writing, of the specific charge or factual allegations to be considered at the hearing, and that such written notice be given at the earliest practicable time, and in any event sufficiently in advance of the hearing to permit preparation. *Due process of law requires notice of the sort we have described—that is, notice which would be deemed constitutionally adequate in a civil or criminal proceeding.* (Emphasis added).

---

4. Indeed, their reliance upon the Federal Act's lack of such a requirement seems reasonable in light of the fact that Congress had not changed the Act to include such a requirement until some 7 years after the decision in *In Re Gault*.

Again, as to the nature of the requirement of parental notice, the Court made it unmistakably clear that " . . . the Due Process Clause of the Fourteenth Amendment requires that . . the child and his parents must be notified of the child's right to be represented by counsel . . ." Id. at 41, 87 S.Ct. at 1451.

In McKeiver v. Pennsylvania, 403 U.S. 528, 532, 91 S.Ct. 1976, 1980, 29 L.Ed.2d 647, the plurality opinion reaffirmed the constitutional stature of the notice requirements spelled out by *Gault*, stating that "Due Process, in that proceeding, was held to embrace adequate written notice. . . ."

In Armstrong v. Manzo, 380 U.S. 545, 550, 85 S.Ct. 1187, 1190, 14 L.Ed.2d 62, the Court had earlier stressed the fundamental nature of the due process requirement of notice:

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.[1]

Moreover, as the majority opinion in the instant case notes, n. 1, the Congress recognized that the 1974 amendment to the Federal Juvenile Delinquency Act prescribing notice to the parents was necessary "to guarantee certain basic procedural and constitutional protections to juveniles under Federal jurisdiction," Senate Report No. 93–1011, 1974 United States Code Congressional and Administrative News, p. 4264. The Report stated that the Act had not been changed since *Gault* " . . . to reflect those due process rights." Id.

Thus, we are not dealing here with a procedural gloss, but with the essence of due process. Due process consists, in large part, of procedure.

Moreover the notice to the parents, along with other essentials, is not merely for protection of their right to custody, see *Gault*, supra, 387 U.S. at 34, 87 S.Ct. 1428, but is notice required for the juvenile's benefit to insure that the parents may have a reasonable opportunity to participate in preparing and presenting the juvenile's case. Cf. Brown v. Cox, 467 F.2d 1255, 1261 (4th Cir.). Such notice therefore is an essential ingredient of due process guaranteed for the juvenile's protection, and the failure to afford it was a constitutional infringement of his rights.

Recognizing that a constitutional error was involved, there remains the question whether the error was harmless beyond a reasonable doubt. Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284; Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705. I feel the omission must be viewed under this test, applied in light of the purpose of the parental notice requirement.

The record does not show whether the parents were able to give assistance in the preparation of the juvenile's case before trial. However the case was not complicated. It is clear that the defendant had the assistance of retained counsel at the arraignment on March 22, 1974, when the delinquency proceeding was commenced with defendant's consent, and at trial on April 10, 1974. Further, the defendant was 17½ years of age[2] and had the ability and opportunity to discuss preparation with trial counsel.

Moreover at the trial, both the defendant's mother and stepfather[3] partici-

---

1. The Court restated this proposition from Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865.

2. Of course, this age factor cannot excuse the lack of the required notices but, in a proper case, I feel it may be considered as a relevant factor in determining whether such a constitutional error was harmless.

3. The stepfather lived in Buena Vista and the mother at Towaoc at the time of trial. While the record does not show the facts, defendant's brief states that his natural father lives on the Ute Reservation in Southwest Colorado. Brief of Appellant, p. 4. The defendant testified he had lived with his stepfather in the summer of 1973, after getting out of school in Albuquerque and that he lived with his grand-

pated in the presentation of defendant's case at trial by giving testimony tending to support the position of self-defense developed by the defendant and his counsel. The mother brought to the trial parts of a broken bottle said to have been used by the deceased brother in the fight between him and defendant Watts.

On consideration of the record as a whole, I conclude that the constitutional error was harmless beyond a reasonable doubt, and agree that the trial court's determination should be affirmed.

mother at Towaoc from September, 1973, through January, 1974.

The trial court determined at the time of arraignment on March 22, 1974, that defendant should be released on his own recognizance on the condition he not leave the near vicinity of the stepfather in Buena Vista. Thus, the stepfather and the mother appear to be the appropriate persons that these facts cause us to consider in connection with the parental notice requirement.