**UNITED STATES of America,
Plaintiff/Appellee,**

v.

**John DOE, (Juvenile),
Defendant/Appellant.**

**No. 82–1406.**

United States Court of Appeals,
Ninth Circuit.

Submitted and Argued Nov. 1, 1982.

Decided March 17, 1983.

820

Gerald T. McFadden, San Diego, Cal., for defendant/appellant.

Maria T. Arroyo-Tabin, Asst. U.S. Atty., argued; Peter K. Nunez, U.S. Atty., Maria T. Arroyo-Tabin, Asst. U.S. Atty., on the brief, San Diego, Cal., for plaintiff/appellee.

Before GOODWIN, HUG, and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Appellant Doe was adjudged a juvenile delinquent for knowingly and willfully transporting illegal aliens from Mexico into the United States. He appeals the adjudication on two bases: alleged violations of the Federal Juvenile Delinquency Act (the "Act")[1] and a Fourth Amendment claim. We affirm.

### Facts

On April 28, 1982, at about 11:00 p.m., Border Patrol Agent Justice noticed Doe's vehicle, a 1973 Plymouth, driving southbound in San Onofre State Park. This is a

---

1. Federal Juvenile Delinquency Act, ch. 645, §§ 5031–5037, 62 Stat. 857 (1948) (codified as amended at 18 U.S.C. §§ 5031–5042 (1976)).

route used by illegal aliens to walk around the San Clemente checkpoint. Agent Justice saw two occupants in the car and noticed the car was riding high. A few minutes later he saw the same car returning northbound on the same road. The car was riding low and contained two or three occupants. He radioed this information to fellow agents.

Responding agents observed Doe's vehicle, and noticed that the car appeared heavily laden and that the male driver and female passenger appeared extremely nervous. Doe pulled away when the agents' car approached. The agents caught up to his car and turned on their red lights. Doe disregarded the signal and continued to speed up the highway. Finally, he crashed into a concrete wall, tried to flee on foot, and was apprehended. Six people in the vehicle were illegal aliens from Mexico.

Doe was arrested, fingerprinted, photographed, and held in a detention facility. The government agents did not notify Doe's parents. Doe's mother, who lives in Tijuana, Mexico, was notified of her son's arrest by a defense investigator.

The next morning, April 29, agents transported Doe to another detention center, where he was questioned at about 11:00 a.m. Material witnesses were interviewed at about 1:00 p.m. Doe was taken to the metropolitan correctional center that afternoon. He appeared before a magistrate for arraignment at 9:00 a.m. the following morning, April 30, when an information was filed charging him with juvenile delinquency under 18 U.S.C. § 5032 (1976) for unlawful transportation of illegal aliens in violation of 8 U.S.C. § 1324(a)(2) (1976). Doe was tried on stipulated facts and adjudged a juvenile delinquent.

### Fourth Amendment Claim

 Regardless of whether we apply a clearly erroneous standard, *United States v. Post,* 607 F.2d 847, 849 (9th Cir.1979), or conduct an independent review, *United States v. One Twin Engine Beech Airplane,*

533 F.2d 1106, 1108 (9th Cir.1976), we hold that the district court did not err in denying Doe's motion to suppress evidence obtained from the stop of appellant's car. The border patrol agents lawfully stopped the car on the founded suspicion it harbored aliens illegally. *See United States v. Roberts,* 470 F.2d 858, 859 (9th Cir.1972), *cert. denied,* 413 U.S. 920, 93 S.Ct. 3071, 37 L.Ed.2d 1042 (1973). We stress that only the facts known to the agents before they turned on their red signal lights may be considered by the court in determining whether founded suspicion existed. *United States v. Morrison,* 546 F.2d 319, 320 (9th Cir.1976). Those facts are: the area is used to avoid the San Clemente checkpoint; the car drove south riding high and returned heavily laden; and the agents who stopped the car sufficiently identified it by color and kind as the one to which the first agent alerted them.

In *United States v. Bugarin-Casas,* 484 F.2d 853 (9th Cir.1973), *cert. denied,* 414 U.S. 1136, 94 S.Ct. 881, 38 L.Ed.2d 762 (1974), this court held there was founded suspicion where the car was riding low, the driver was alone, and the model of the car had been used before to smuggle aliens in a floor compartment. There was also founded suspicion in *United States v. Roberts,* where the car was ninety miles from the Mexican border, the route it was driving was used frequently to bypass a checkpoint, the rear of the car was riding low, and someone was slouched down in the front passenger's seat. 470 F.2d at 859. The district court's denial of the motion to suppress is affirmed.

### Juvenile Delinquency Act

Doe argues on appeal that the information should have been dismissed by the trial court for three alleged violations of the Act.[2] First, Doe's parents were not immediately notified by border patrol agents of Doe's arrest. Second, Doe was fingerprinted and photographed without a judge's con-

---

**2.** The Act does not by its own terms specify a remedy for violation of its provisions. Since

we affirm the adjudication, we do not reach the issue of available remedies in this case.

sent. Third, Doe was detained for an unreasonably long time before appearing before a magistrate.

■ Section 5033 of the Act provides that whenever a juvenile is taken into custody for a delinquent act, the arresting officer shall immediately notify the juvenile's parents.[3] Failure to notify may also give rise to a constitutional violation on due process grounds. *In re Gault,* 387 U.S. 1, 31, 34, 87 S.Ct. 1428, 1445, 1447, 18 L.Ed.2d 527 (1967); *see also McKeiver v. Pennsylvania,* 403 U.S. 528, 532, 91 S.Ct. 1976, 1980, 29 L.Ed.2d 647 (1971).

■ The government argues it was impractical to locate and notify Doe's parents, since Doe is an illegal alien from Tijuana, Mexico. The facts of Doe's unlawful entry into the United States and his mother's foreign residence do not automatically excuse deviation from the Act. Reasonable efforts should be made to notify the parents of any juvenile taken into custody. For those juveniles whose parents live outside the United States, if it is not feasible to notify a parent or guardian, the government could alternatively notify a foreign consulate in the United States.

■ In *Gault,* the arresting officer did not notify the parents when their son was taken into custody. His mother heard her son had been arrested and went to the detention home, where she was orally informed of a hearing scheduled for the next day. The only written notice the parents received was a note on plain paper from an officer delivered three or four days later, advising them of "further Hearings" on their son's delinquency. The Court held such notice inadequate. Protection of due process requires that notice "must be given sufficiently in advance of scheduled court

proceedings so that reasonable opportunity to prepare will be afforded." *Id.* 387 U.S. at 33, 87 S.Ct. at 1446.

■ We recognize that in some circumstances, such as those present in *Gault,* failure to notify may so impair a defendant's ability to prepare for a hearing as to constitute a deprivation of due process rights. Implication of constitutionally protected rights might occur, for example, where no notice is given, or the notice does not set forth in writing the specific charge or factual allegations which the defendant must face at the hearing. *Id.* Where such lack of, or inadequate, notice does not allow a defendant reasonable opportunity to prepare, the juvenile's due process rights have been violated. There is no denial of due process, however, where the arresting officer's failure to notify has no adverse effect on the fundamental fairness of the proceedings and where the purpose of the Act's notification provision, to guard the juvenile's due process rights, has been met. That is the case here. Counsel for Doe conceded that the government's failure to notify Doe's mother immediately had no adverse effect on the fairness of the adjudication proceeding, since she was immediately contacted by defense counsel. Moreover, the government voluntarily declined to use the statement Doe made before his arraignment. Thus the prosecution did not benefit from the fact that the government did not act immediately to notify Doe's mother.

Other circuits have also rejected a *per se* rule requiring reversal where the Act's notice requirement is technically violated, but the violation does not infringe upon the juvenile's right to due process of law. In *United States v. Watts,* 513 F.2d 5 (10th Cir.1975), the Tenth Circuit characterized the notice requirement as a "safeguard"

---

**3.** The statute reads in pertinent part:

Whenever a juvenile is taken into custody for an alleged act of juvenile delinquency, the arresting officer ... shall immediately notify the Attorney General and the juvenile's parents, guardian, or custodian of such custody.

The arresting officer shall also notify the parents, guardian, or custodian of the rights of the juvenile and of the nature of the alleged offense.

18 U.S.C. § 5033 (1976).

established to protect due process rights. Where the government's actions technically violate that safeguard, the court must step in to inquire whether in fact the juvenile's due process rights were violated by failure to notify. *Id.* at 8; *see also United States v. White Bear,* 668 F.2d 409, 412 (8th Cir. 1982) (notice requirement is an "additional safeguard" to insure that due process rights are not violated).

Doe also alleges a violation of section 5038(d)(1) of the Act. Under this section, fingerprinting and photographing anyone under 18 years of age requires the written consent of a judge. 18 U.S.C. § 5038(d)(1) (1976). The government says it fingerprinted and photographed Doe pursuant to Immigration and Naturalization Service ("INS") regulations which direct INS agents to fingerprint and photograph every alien 14 years of age or older.[4]

■ There is a clear conflict between the Act and the INS regulations. Where an administrative regulation conflicts with a statute, the statute controls. *Pacific Northwest Bell Telephone Co. v. United States,* 378 F.Supp. 297, 298 (W.D.Wash. 1974); 73 C.J.S. *Public Administrative Bodies and Procedure* § 103 (1951). Here, however, the technical violation of the Act does not require reversal. The government agents acted in good faith under regulations they believed authorized their actions. Taking appellant's prints and picture was not a serious intrusion of appellant's Fourth Amendment rights. In *United States v. Sechrist,* 640 F.2d 81 (7th Cir.1981), the Seventh Circuit held that taking fingerprints does not entail a "significant invasion of one's privacy." *Id.* at 86. The court cited *Davis v. Mississippi,* 394 U.S. 721, 727, 89 S.Ct. 1394, 1397, 22 L.Ed.2d 676 (1969), where the Supreme Court recognized that

detention for fingerprinting may constitute a much less serious intrusion than other police practices.

The Act does not provide a specific remedy for violation of section 5038(d)(1). In the past we have declined to specify the appropriate remedy for violation of the section, *see United States v. Duncan,* 570 F.2d 292, 293 (9th Cir.1978), and we do so again. The action did not amount to a constitutional violation, and Doe can seek to have the records expunged. *See Menard v. Saxbe,* 498 F.2d 1017, 1023 (D.C.Cir.1974) (judicial remedy of expunction exists to vindicate substantial rights); *Sullivan v. Murphy,* 478 F.2d 938, 968 (D.C.Cir.), *cert. denied,* 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973). The trauma Doe might have suffered by being printed and photographed was at most minimal. Violation of this section does not require reversal.

■ Finally, we are confronted with the issue of whether an unreasonable length of time passed between Doe's arrest and arraignment. Section 5033 of the Act provides that a juvenile taken into custody for an alleged act of delinquency shall be taken before a magistrate "forthwith," and in no event shall be detained for longer than a "reasonable period" before appearing before a magistrate. 18 U.S.C. § 5033 (1976). The district court found there was no unreasonable delay between appellant's arrest sometime after 11:00 p.m. on April 28 and his appearance before a magistrate the morning of April 30. Whether we review the district court's conclusion for clear error, or conduct an independent review, *see United States v. One Twin Engine Beech Airplane,* 533 F.2d at 1107–09, we affirm the district court's finding that it was not an unreasonable delay "under the circumstances".

---

4. The regulation states:

Every alien 14 years of age or older against whom proceedings are commenced under this part shall be fingerprinted. Any such alien, regardless of his age, shall be photographed if a photograph is required by the district director, acting district director, deputy district director, or officer in charge authorized to issue an order to show cause. 8 C.F.R. § 242.4 (1982). *See also* 8 C.F.R. § 264.1(f) (1982).

Other courts have afforded relief to juvenile appellants in cases involving a shorter period of delay. *See United States v. Binet,* 442 F.2d 296 (2d Cir.1971); *United States v. Glover,* 372 F.2d 43 (2d Cir.1967). In those cases, however, the courts were bound by the predecessor statute to § 5033, which provided that detention could not be for a longer period than "necessary" to produce the juvenile before a magistrate.[5] The legislative history of § 5033 as amended provides no clue as to why the language of the statute was changed. *United States v. Smith,* 574 F.2d 707, 710 (2d Cir.), *cert. denied,* 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978).

The particular facts in this case persuade us that the delay here was reasonable. The government made a good faith effort to arraign Doe as soon as possible, but no magistrate was available until the morning of April 30. The agents were extremely busy the day Doe was taken into custody, and they had to give priority to more urgent cases, including a woman in late pregnancy and women with infants and small children. Only because of these exigencies, and the fact that the government did not use the pre-arraignment statement Doe made, are we willing to say here that the juvenile appeared before a magistrate "forthwith." Under less urgent circumstances, the government should give priority to the arraignments of juveniles in custody.

Although the government deviated from the literal demands of the statute, its technical violations were not causally related to Doe's adjudication as a juvenile delinquent. The government's actions do not individual- ly or cumulatively constitute grounds for reversal. Accordingly, we affirm.

AFFIRMED.

---

**5.** The statute used to read in pertinent part:

> Whenever a juvenile is arrested for an illeged [sic] violation of any law of the United States, the arresting officer shall immediately notify the Attorney General.
>
> If the juvenile is not forthwith taken before a committing magistrate, he may be detained
> . . . .
>
> In no case shall such detention be for a longer period than is necessary to produce the juvenile before a committing magistrate.

Federal Juvenile Delinquency Act, ch. 645, § 5035, 62 Stat. 857, 858 (1948) (current version at 18 U.S.C. § 5033 (1976)).

> It now reads:
>
> The juvenile shall be taken before a magistrate forthwith. In no event shall the juvenile be detained for longer than a reasonable period of time before being brought before a magistrate.

18 U.S.C. § 5033 (1976).