UNITED STATES of America,
Plaintiff–Appellee,

v.

John DOE, Defendant–Appellant.

No. 87–5367.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1988.

Decided Dec. 8, 1988.

Robert E. Schroth, San Diego, Cal., for defendant-appellant.

Peter K. Nunez, Bruce R. Castetter, and John P. Pierce, San Diego, Cal., for plaintiff-appellee.

Before WALLACE, TANG and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

This appeal from a delinquency determination raises questions concerning the scope and meaning of the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031 *et seq.* (1974). Appellant, a juvenile and citizen of Mexico to whom we refer as John Doe, also challenges the sufficiency of the evidence used to convict him of importation into the United States of illegal aliens under 18 U.S.C. § 5032. We find that the government violated the prompt arraignment and notification provisions of the Juvenile Delinquency Act. We reverse and remand for a determination of whether the statutory violations prejudiced Doe's proceedings.

## FACTUAL BACKGROUND

On the night of September 21, 1987, United States Border Patrol Agents sighted, pursued, and overcame a Buick station wagon carrying twelve Mexican citizens near the United States–Mexico border. The vehicle was first seen driving with its headlights off through an open field approximately one to one-and-a-half miles from the Otay Mesa Port of Entry. Border agents followed the car as it continued onto a dirt farm road, then onto Otay Mesa Road, and finally, as it crossed the border into the United States, onto Interstate 805. The agents maintained surveillance as the Buick turned off I–805 onto side streets and its occupants dispersed. John Doe was ultimately apprehended in a garage about a half-mile from the station wagon.

Doe was then taken, along with the other occupants of the vehicle, to the Border Patrol Station at Brown Field. There, Border patrol agents began to question Doe for purposes of completing the series of

forms with which persons suspected of illegal entry into this country are processed. The first of these forms was the I–213, a biographical and narrative record compiled for deportability purposes. In response to biographical questioning, the agents in charge of processing Doe learned that he was a minor.

According to the testimony of Agents Robert Fagan and Jose Livanios, they each then promptly advised Doe in Spanish of his rights as a juvenile using the standard juvenile rights card. These rights include the rights to use a phone, to consult a lawyer, and to have a deportation hearing or to return voluntarily to one's country of origin. The juvenile rights form that was introduced at trial did not bear Doe's signature, but did include a one-sentence statement—apparently written by Doe—that agents had allowed him to make a phone call.

Doe was also processed with Form I–274, which testimony suggested was similar to the juvenile rights form with the exception that the I–274 also mentioned the possibility of Doe going to jail. The I–274 affords detainees four basic rights: (1) the right of voluntary return to their country; (2) the right to speak to a lawyer; (3) the right to speak to a representative of the consulate of their country of origin; and (4) the right to an immigration hearing. According to Agent Fagan's testimony, these rights are not mutually exclusive; detainees may exercise any or all of them. Doe signed this form, choosing the option of voluntary return to Mexico.

The questioning of Doe for purposes of immigration processing continued. During this questioning, Doe told the Border Patrol agents that he had been the driver of the Buick. When the forms were completed, the Agents advised Doe that he was going to be charged criminally. Doe was sent along to the Prosecution Unit of the Border Patrol, wherein he was processed with Form I–326. At this point, Doe became reticent. The I–326 produced at trial stated: "The defendant refused to make a statement and requested to speak to a lawyer. All information was taken from arresting agent's report."

Doe was arraigned on the morning of September 23, 1987. He was represented at his arraignment by counsel, who moved to either dismiss the information or suppress Doe's post-arrest statements on the grounds that the government had failed to comply with the requirements of section 5033 of the Federal Juvenile Delinquency Act that it notify Doe's parents, guardian, or custodian of his arrest and bring him before a magistrate "forthwith." These contentions came before the district court at a hearing on October 19, 1987. The government stipulated at that time not to use Doe's incriminating post-arrest statements in its case-in-chief at trial. All other issues were put over for hearing on the following day, the scheduled trial date.

At the trial, the government introduced eight witnesses, including several Border Patrol agents and three of the eleven occupants of the Buick on the night of September 21. It did not use Doe's statements in its case-in-chief, but these statements were introduced through defense counsel's cross-examination of Agent Fagan. At the close of evidence, the court denied Doe's motion for a directed verdict on the basis of insufficient evidence. The court then heard argument on Doe's Federal Juvenile Delinquency Act motions and concluded "that the Government's actions did not constitute such violations of due process as would require dismissal of the charge." In reaching this conclusion, the court explicitly declined to make a finding as to whether the government had complied with the congressional statute. The court then stated: "There's no doubt in my mind but what Mr. [Doe] was driving the automobile. He is found to be a juvenile delinquent...."

On November 9, 1987, Doe was sentenced to one-year-and-one-day imprisonment and placed on three years probation. This judgment was entered on November 10, 1987. The notice of appeal was filed in a timely manner on that same day. We have jurisdiction pursuant to 28 U.S.C. § 1291.

DISCUSSION

A. *Notification*

Doe contends that the government failed to comply with the Federal Juvenile Delinquency Act's requirements of parental notification and prompt arraignment. According to Doe, the government made no effort to contact his parents and did not even contact the Mexican Consulate to inform a representative of his country of his arrest. It also failed, Doe argues, to bring him before a magistrate "within a reasonable time." 18 U.S.C. § 5033.

■ Doe's notification claim raises a predominantly factual question which we review under the clearly erroneous standard.[1] *See United States v. McConney*, 728 F.2d 1195, 1203–04 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). His statutory claim based on the speedy arraignment provision presents a mixed question of law and fact for which *de novo* review is appropriate. *Id.* at 1202 (*de novo* review required when "the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles").

Our inquiry into both the notification and arraignment claims proceeds in three stages. First, we address whether the government violated the requirements of the Juvenile Delinquency Act. If it did, we reach the second question: whether the government's conduct was so egregious as to deprive Doe of his right to due process of law. *See In Re Gault*, 387 U.S. 1, 31, 87 S.Ct. 1428, 1445, 18 L.Ed.2d 527 (1967); *United States v. Doe*, 701 F.2d 819, 822 (9th Cir.1983). If it was not, we reach the third question: was the violation harmless to the juvenile beyond a reasonable doubt? *See Bank of Nova Scotia v. United States*, —— U.S. ——, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988); *United States v. Indian Boy X*, 565 F.2d 585, 592–93 (9th Cir. 1977), *cert. denied*, 439 U.S. 841, 99 S.Ct. 131, 58 L.Ed.2d 139 (1978).

■ The Federal Juvenile Delinquency Act applies to illegal aliens as well as to American citizens. *See Doe*, 701 F.2d at 822. Even if the juvenile is an illegal entrant into this country and his parents reside abroad, the government must make reasonable efforts to notify the parents. These reasonable efforts may consist of either (a) actual notification or (b) sufficient inquiry or effort to make the reasonable determination that actual notification is not feasible, in which case the government may opt for the alternative of notifying a foreign consulate in this country. *Id.* The burden of showing compliance with this statutory requirement is on the government.

■ In this case, there is no dispute that the government did not even attempt to contact Doe's parents. This lapse in itself amounted to a violation of the statute. The district court apparently thought, and the government argues on appeal, that the fact that Border Patrol agents afforded Doe the opportunity to call his parents was sufficient to satisfy the statute. The language of § 5033, however, is clear. It reads:

> Whenever a juvenile is taken into custody for an alleged act of juvenile delinquency, *the arresting officer ... shall immediately notify ...* the juvenile's parents, guardian, or custodian of such custody. *The arresting officer shall also notify* the parents, guardian, or custodian of the rights of the juvenile and of the nature of the alleged offense.

18 U.S.C. § 5033 (emphasis added). The statute makes no provision for notification of his parents by the juvenile. The statute unambiguously states that the required communication must have substantive content: notification "of the rights of the juvenile and of the nature of the alleged offense." The government must do so, and in this case it has neither done so nor made a showing as to why compliance with the statute would have been unfeasible.

---

**1.** In this case, the district court did not directly address the statutory issues but did make factual findings relevant to the notification issue.

■ In failing to make reasonable efforts to reach Doe's parents in Mexico, the government violated the statute. Further, the government has produced no evidence that it complied with the requirement of notice to the Mexican Consulate in the event that it is not feasible to notify a parental figure. The government maintained that it had notified the Consulate, but was contradicted by defense counsel's report "that he had contacted the Mexican Consulate by telephone, and that Consulate personnel had informed him that the Consulate had no record" of a call from the government on September 23, 1987. The government does not renew its argument on appeal, but recites in great detail the procedure that it generally follows in similar cases. General arguments do not suffice under the statute; section 5033 requires that the Consulate be notified of Doe's status. Thus, even if the government made reasonable efforts to contact Doe's parents, it violated the statute by failing to show that it notified the Mexican Consulate of Doe's arrest and of the charges against him.

### B. *Arraignment*

Doe also argues that the government violated section 5033's requirement that arraignment of juveniles take place "forthwith," and in no event longer than a "reasonable period" after arrest. Both parties agree that approximately 36 hours elapsed between Doe's arrest and his arraignment, but they disagree as to whether this 36-hour period was "reasonable" within the meaning of the statute. We address this question *de novo*. *McConney*, 728 F.2d at 1202–04.

■ Both parties rely on our earlier *Doe* decision, in which we held that a delay of 36 hours was reasonable because a series of exigencies prevented prompt arraignment. The government argues that the circumstances that led us to conclude that the delay in that case was reasonable are also present here. In support of this argument, however, it offers only the parallel that both cases involved Mexican juveniles arrested at night within the Southern District of California for alien smuggling. In so reading *Doe*, the government overlooks the two crucial exigent circumstances on which our holding was based: (1) the unavailability of a magistrate for an earlier arraignment; and (2) the fact that the Border Patrol "agents were extremely busy the day Doe was taken into custody, and they had to give priority to more urgent cases, including a woman in late pregnancy and women with infants and small children." 701 F.2d at 824. We stated: "Only because of these exigencies, and the fact that the government did not use the pre-arraignment statement Doe made, are we willing to say here that the juvenile appeared before a magistrate 'forthwith.'" *Id.* In language pertinent to the instant case, we added: "Under less exigent circumstances, the government should give priority to the arraignments of juveniles in custody." *Id.*

In this case, the government has offered no exigent circumstances other than the mere facts of arrest and transportation of Doe from their processing facility to the juvenile detention center. We reject the expansive proposition that a delay of 36 hours is reasonable whenever the detained juvenile is arrested at night and is suspected of alien smuggling. In the circumstances of this case, we hold that the delay of 36 hours was not reasonable, and that the government therefore violated section 5033 of the Delinquency Act.

### C. *Due Process and Prejudice*

■ Having determined that the government violated the notification and speedy arraignment requirements of section 5033, we address the question of remedies. Reversal of Doe's conviction is mandatory if the government's lapses were so egregious as to deprive Doe of his right to due process. *See Gault*, 387 U.S. at 12–59, 87 S.Ct. at 1435–60; *Doe*, 701 F.2d at 822–23. If the statutory violations did not rise to the level of constitutional violations but nonetheless prejudiced Doe, we have discretion to reverse or to order more limited remedies so as to ensure that Doe's rights are safeguarded and the will of Congress is

not thwarted. *See Doe,* 701 F.2d at 823 (holding that violation of section 5038(d)(1) did not require reversal when the government's action did not amount to a constitutional violation, and discussing alternative remedy of expunction); *id.* at 824 (premising finding that delay in arraignment was reasonable in part on the government's willingness to suppress a prearraignment admission); *United States v. Watts,* 513 F.2d 5, 8–9 (10th Cir.1975) (holding that "technical violations" of the Act did not require reversal when due process rights were not denied). If the statutory violations did not prejudice Doe, we must affirm the conviction. Fed.R.Crim.P. 52(a); *see Bank of Nova Scotia,* 108 S.Ct. at 2374; *Indian Boy X,* 565 F.2d at 592–93.

▆▆▆ The record provides insufficient information upon which to decide whether the statutory violations prejudiced Doe. The government, by failing to notify either Doe's parents or the Consulate of his custody, needlessly isolated this juvenile in a strange environment and deprived him of support and counsel during the pre-arraignment period. This sense of isolation was exacerbated and extended by the unreasonable delay between Doe's arrest and his arraignment, and may have led directly to his post-arrest confessions. The connection between the government's misconduct and those confessions is a factual question to be explored on remand. *See United States v. Taylor,* — U.S. —, 108 S.Ct. 2413, 2422 n. 13, 101 L.Ed.2d 297 (1988) (determinations of prejudice are factual inquiries to "be made on a case-by-case basis").

▆▆▆ Also relevant to the issue of prejudice is the point at which the agents forwarded Doe to the prosecution unit. If, as the agents testified, they *saw* Doe behind the wheel of the Buick, it would have been logical for them to start the criminal process in motion immediately after apprehending Doe. Instead, the evidence showed that Doe was not forwarded to the prosecution unit until after he admitted to driving the vehicle. If the prosecution resulted from the confession and the confession came in part as a result of Doe's isolation from family, friends, representatives of his country or an attorney, then the statutory violations must be said to have prejudiced Doe.[2]

▆▆▆ Should the district court find on remand that Doe was prejudiced by the governmental conduct that gave rise to the statutory violations, we instruct the court to reverse Doe's conviction and to dismiss all charges against him. Although we note that a finding of prejudice may tend to militate toward a conclusion that Doe's due process rights were violated, the district court need not go that far, nor do we. The Juvenile Delinquency Act was enacted to protect juveniles' due process rights, *see, e.g., United States v. White Bear,* 668 F.2d 409, 411–12 (8th Cir.1982) (per curiam), but is not coextensive with constitutional guarantees, *see Doe,* 701 F.2d at 822. Even if the government's conduct did not so prejudice Doe as to undermine "the fundamental fairness" of his proceedings, *id.,* the necessity of ensuring that this prophylactic safeguard for juveniles not be eroded or neglected dictates a reversal if there is a finding of prejudice on remand.

## CONCLUSION

We remand for the district court to make all findings relevant to a determination of whether the government's violations of the notice and speedy arraignment provisions of the Federal Juvenile Delinquency Act prejudiced Doe's defense. If such prejudice is found, we direct the district court to

---

**2.** We note that Doe probably was not prejudiced by signing the waiver form that released eight of the eleven passengers of the Buick from testifying at trial. The three passengers who testified all said that they had not seen who the driver was, and it may be assumed that the other eight would say the same. The government made its case on the basis of other evidence, primarily the eyewitness testimony of Border Patrol agents.

Nor was Doe prejudiced by his inability to inspect the Buick before trial. Physical evidence played little role in the trial, and access to the car would not have helped Doe rebut the evidence that he was the driver.

Nonetheless, should evidence of which we are not now aware convince the district court that Doe was prejudiced by these two "fruits" of his time in isolation, we instruct it to find accordingly.

reverse Doe's conviction and to dismiss all charges against him. Because we so hold, we do not reach the due process question.

REVERSED IN PART and REMANDED.

TANG, Circuit Judge, concurring:

I concur in the majority's view that the government's conduct violated this juvenile's statutory rights. I write separately to emphasize first that the violations were so egregious that we could easily conclude that Doe was prejudiced without a remand for further fact finding, and second that the proper remedy for such misconduct is dismissal of the charges against the juvenile?

In this case, a fifteen year old boy, clearly in his minority, was detained for 36 hours by the Border Patrol in flagrant violation of his statutory rights to notification of his parents, guardian or custodian and of his right to arraignment within a reasonable period of time. 18 U.S.C. § 5033. The inherently confusing bureaucratic procedures to which the youngster was subjected compounded the seriousness of these statutory violations. Presented with a variety of forms, Doe early requested the stated option of voluntary departure. After having done so, but without being granted the option of voluntary departure, he was prevailed upon to make incriminating statements about his role in the border crossing incident. Only then was he informed, belatedly, that he would be subject to criminal prosecution for a felony violation. Then, too late, he refused to speak further and asserted his right to counsel. This situation presents a paradigmatic illustration of the rationale for our legal system's enhanced solicitude for the rights of juveniles, particularly their right to have a parent, guardian or custodian notified before interrogation begins. Deprived of the advice or support of a responsible adult, Doe had already incriminated himself before he was advised of his right to legal counsel. His own words were then used to convict him, words the government elicited from him only by violating his statutory and constitutional rights. Greater preju-

dice is difficult to imagine. What are the needs and interests of justice that demand a fifteen year old be charged and convicted of a felony in this type of case?

Dismissal of the charges is appropriate because it is imperative that a clear message is sent to the Border Patrol and the Department of Justice that such violations will not be tolerated. The government now argues before us that its conduct conforms to the "spirit" of our prior decision in *United States v. Doe*, 701 F.2d 819 (9th Cir. 1983), where this court found excuse for non-compliance with the statute in that instance, and it apparently asks that we sanction the apparent practice of disregarding the statute and continue to excuse such violations of duty. To the contrary, the literal meaning and the spirit of *Doe* require strict compliance with the law and permit deviations from the statutory requirements only in the face of exigent circumstances. Because no such circumstances exist in this case, I would echo and re-echo the warning of the district court:

> I suggest to the Government ... that they better order the Border Patrol to change their procedures.... I don't think the statute can be read other than that—they have no obligation to go to a foreign country, but I think they have an obligation to try and make a phone call rather than leaving it up to an incarcerated juvenile to do so, to locate the parents.
>
> Also, I suggest that they better change their procedures so that anybody that's arrested before midnight is arraigned the next day, and not the second day.

In this case adequate justice requires that we clear this juvenile's record; the appropriate remedy is to dismiss the charges against Doe.

WALLACE, Circuit Judge, concurring and dissenting:

I concur in all but section C of the majority opinion. I write separately because I believe that the record demonstrates that Doe suffered no prejudice. We need not, therefore, remand this case to the district

court. Doe's conviction should be affirmed.

The majority suggests that the record contains insufficient information to decide whether the government's statutory violations prejudiced Doe. Maj. op. at 781. It is suggested that the government's failure to notify Doe's parents or consulate of his custody, and its delay in forwarding him to the prosecution unit, may have caused his post-arrest confessions and his prosecution itself. I believe that the record indicates otherwise.

After his arrest, Doe confessed details of the illegal immigration scheme, including his role as driver, to the Immigration and Naturalization Service (INS). Before trial, however, the government agreed not to use these post-arrest statements during its case-in-chief. It was Doe's counsel who, during cross-examination of an INS agent, elicited damaging testimony describing Doe's post-arrest confession. Doe's counsel failed to interrupt or limit this damaging testimony, although he did unsuccessfully move afterwards to strike the testimony. Doe cannot raise on appeal the possible prejudicial effect at trial of an alleged error which he himself invited or introduced. *United States v. Miller,* 771 F.2d 1219, 1234 (9th Cir.1985); *Burgess v. Premier Corp.,* 727 F.2d 826, 834 (9th Cir. 1984); *Shorter v. United States,* 412 F.2d 428, 431 (9th Cir.), *cert. denied,* 396 U.S. 970, 90 S.Ct. 454, 24 L.Ed.2d 436 (1969).

The majority suggests that prejudice may be shown if Doe's prosecution resulted from these post-arrest statements, and if these statements themselves resulted from the government's statutory violations. Maj. op. at 781. The Supreme Court's recent opinion in *Bank of Nova Scotia v. United States,* — U.S. —, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), suggests otherwise. *Bank of Nova Scotia* involved statutory, nonconstitutional error at the grand jury phase of criminal proceedings. Applying harmless error analysis, the Court held that the district court erred in dismissing the charges against the defendants. Nonconstitutional error requires dismissing charges only " 'if it is established

that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* at 2374, *quoting United States v. Mechanik,* 475 U.S. 66, 78, 106 S.Ct. 938, 945, 89 L.Ed.2d 50 (1986) (O'Connor, J., concurring). Here we are similarly faced with the effect of a nonconstitutional statutory violation on the decision to charge and prosecute. We must therefore consider whether Doe's post-arrest statements substantially influenced the decision to charge and prosecute Doe, or whether we have grave doubts that this decision was free from the substantial influence of Doe's statements. Neither of these tests is met in this case. The government expressly stipulated that it would not use these statements at trial. It would not have pursued Doe's prosecution without believing that there was a good chance of obtaining a conviction without that evidence. Doe's post-arrest statements, therefore, could not have substantially influenced the decision to charge and prosecute. For the same reasons, I have no grave doubts that the decision to charge and prosecute Doe was free from the substantial influence of the government's statutory violations.

To the extent that Judge Tang's concurrence, by labeling the statutory violations here "so egregious," suggests that the government's failures under section 5033 also violate Doe's constitutional right to due process, I cannot agree. Concurrence at 782; maj. op. at 779. As the majority opinion properly states, the Juvenile Delinquency Act was enacted to protect the due process rights of juveniles, but it is not coextensive with constitutional guarantees. Maj. op. at 782; *United States v. Doe,* 701 F.2d 819, 822 (9th Cir.1983) (*Doe* ); *United States v. White Bear,* 668 F.2d 409, 411–12 (8th Cir.1982) (per curiam) (*White Bear* ). This and other circuits have rejected a *per se* reversal rule for technical violations of the Juvenile Delinquency Act. *Doe,* 701 F.2d at 822–23; *United States v. Watts,* 513 F.2d 5, 7–8 (10th Cir.1975); *see also White Bear,* 668 F.2d at 412. A court must examine whether a technical violation

784

did in fact infringe on the juvenile's due process rights. *Doe*, 701 F.2d at 822–23. We have stated that there is no denial of due process where "the arresting officer's failure to notify has no adverse effect on the fundamental fairness of the proceedings and where the purpose of the [Juvenile Delinquency] Act's notification provision, to guard the juvenile's due process rights, has been met." *Id.* at 822. The government's agreement not to use Doe's post-arrest statements ensured the fundamental fairness of Doe's trial and fulfilled the purpose of guarding his due process rights. Because there was no constitutional violation, I cannot agree with Judge Tang that dismissal of the charges would be appropriate in this case. Concurrence at 782.