141 F.3d 1181
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
J.L.B. Juvenile, Defendant-Appellant.
 No. 97-50328.
D.C. No. CR-97-00615-HBT.
 United States Court of Appeals, Ninth Circuit.
 Decided March 9, 1998.
Submitted March 5, 1998** Pasadena, California.
 
 Appeal from the United States District Court for the Southern District of California Howard B. Turrentine, Senior District Judge, Presiding.
 Before BRUNETTI, THOMPSON, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 J.L.B. Juvenile (J.L.B.) appeals his conviction, following a bench trial, for knowing possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 952 and 960. He argues that the notice provisions of the Federal Juvenile Delinquency Act (the Act), 18 U.S.C. § 5033, were not complied with, and, that the district court erred in sentencing him. We have jurisdiction, 28 U.S .C. § 1291. J.L.B.'s statutory claim based on the notification provision presents a mixed question of law and fact of which de novo review is appropriate. See United States v. Doe, 862 F.2d 776, 779 (9th Cir.1988) (Doe II ) (stating that "de novo review is required when 'the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles' ") (citations omitted). Upon review, we affirm the district court, but for different reasons.
 
 I.
 
 3
 On February 22, 1997, at approximately 2:30 in the morning, United States Border Patrol Agents detected foot traffic from Mexico into the United States near the Andrade, California Port of Entry. A search of the area produced several duffle bags containing marijuana and at least two people, one being J.L.B. J.L.B. was placed under arrest and taken to the Yuma, Arizona Border Patrol Station for processing.
 
 
 4
 At the Yuma Station, Drug Enforcement Administration Special Agents questioned J.L.B. It was discovered that J.L.B. was a juvenile. J.L.B. informed the agents that his parents and godmother resided in Mexico and did not have telephone service.
 
 
 5
 J.L.B. was advised of his constitutional rights in Spanish. He waived those rights and gave the statement which is at issue here.
 
 
 6
 At approximately 7:00 a.m., Assistant United States Attorney Peter Lewis was contacted. Lewis advised the Special Agents to call the Mexican consulate. Numerous attempts to contact the consulate were made, but there was no answer. At about 10:30 a.m., Lewis reached a member of the consulate's staff and informed him of J.L.B.'s custody, where J.L.B. could be contacted, and the date set for his first court appearance.
 
 
 7
 J.L.B. filed a motion to suppress his confession claiming that it was obtained in violation of the notice provisions of the Act. The district court denied the motion. J.L.B. was adjudicated delinquent and sentenced to eighteen months in jail. This appeal followed.
 
 II.
 
 8
 Rule 4(b) of the Federal Rules of Appellate Procedure requires that notice of appeal in a criminal case be filed in the district court within ten days after the entry of a judgment or order appealed from. The government argues that appeal was not timely in this case. We disagree. The judgment was entered on May 20, 1997. Notice of appeal was also entered on May 20, 1997.
 
 
 9
 The Federal Juvenile Delinquency Act applies to juveniles in federal custody under federal arrest. See, e.g., Doe II, 862 F.2d 776. We expressly reject the government's contention that the protections of the Act do not apply until a criminal information has been filed. Our case law establishes that the Act's protections apply at the point of federal arrest. Id.
 
 
 10
 We review allegations of improper notification under the Act according to a three-step analysis. First, we address whether there was a violation of the Act. If there was, we reach the second question of whether the government's conduct was so egregious as to deprive J.L.B. of his right to due process of law. If it was not, we reach the third question of whether the violation was harmless to a juvenile beyond a reasonable doubt. Doe II, 862 F.2d at 779.
 
 Section 5033 provides that:
 
 11
 Whenever a juvenile is taken into custody for an alleged act of juvenile delinquency, the arresting officer shall immediately notify ... the juvenile's parents, guardian, or custodian of such custody. The arresting officer shall also notify the parents, guardian, or custodian of the rights of the juvenile and of the nature of the alleged offense.
 
 
 12
 18 U.S.C. § 5033. Further, we read this section to mandate that in the case of an alien juvenile whose parents cannot be reached, the government must take reasonable steps to notify the consulate of the juvenile's country of origin. United States v. Doe, 701 F.2d 819, 822 (9th Cir.1983) (Doe I ).
 
 
 13
 In this case, the special agents notified the Mexican consulate after J.L.B.'s interrogation. No attempt at notification was made prior to J.L.B.'s interrogation. The district court ruled that the government's actions here complied with § 5033. In light of Doe I, the notification provisions of § 5033 were not satisfied on these facts.
 
 
 14
 As to the second prong, there was no due process violation. This court has stated that "[t]he Juvenile Delinquency Act was enacted to protect the juveniles' due process rights, but is not coextensive with constitutional guarantees." Doe II, 862 F.2d at 781 (internal citations omitted). There is no denial of due process, however, where the arresting officer's failure to notify has no adverse effect on the fundamental fairness of the proceedings. Doe I, 701 F.2d at 822. The government's conduct here had no adverse effect on the fundamental fairness of the interrogation. The record shows that J.L.B. was not isolated for an extended period of time, was not coerced, and when Mirandized, he properly waived his rights. Thus, we cannot say that the government's conduct was so egregious as to deprive J.L.B. of his right to due process of law.[1]
 
 
 15
 Finally, the statutory violation did not prejudice J.L.B. It is undisputed that no one was in the Mexican consulate to answer phones early in the morning on Saturday, February 22, 1997. Even though the statute requires that reasonable attempts at immediate notification be made, on these facts it would have made no difference. All that is required is a reasonable effort to notify, not an actual notification. The interrogation would have proceeded just as it did had the government complied.
 
 
 16
 Thus, although a technical violation of § 5033 did occur, the violation neither rose to the level of a due process violation nor prejudiced J.L.B. Suppression of J.L.B.'s statements was properly denied and J.L.B.'s conviction must be affirmed. Fed.R.Crim.P. 52(a); see Doe II, 862 F.2d at 781.
 
 
 17
 Since we affirm the denial of J.L.B.'s motion to suppress and thus affirm the conviction, we will not address the government's argument that J.L.B. failed to request dismissal below. Whether J.L.B. requested dismissal as the remedy for violation of the Act is irrelevant at this point; we hold that no relief is warranted.
 
 III.
 
 18
 The district court sentenced J.L.B. to eighteen months after recognizing that this is the same sentence that J.L.B.'s adult codefendant received. J.L.B. argues that in so doing the district court erred by failing to consider the Act's goal of rehabilitation. We review the legality of a sentence de novo. United States v. Fine, 975 F.2d 596, 599 (9th Cir.1992).
 
 
 19
 Under 18 U.S.C. § 5037, the district court has discretion to sentence an adjudged delinquent to official detention. If detention is ordered, the maximum term possible is that which would have been applicable under the Federal Sentencing Guidelines had the juvenile been an adult at the time. United States v. R.L.C., 503 U.S. 291, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992). The maximum sentence an adult would be subject to in J.L.B's position would be 30-37 months after potential reductions. Accordingly, a sentence of 18 months is well below the potential maximum the district court could have imposed.
 
 
 20
 J.L.B. argues that the district court is required to consider rehabilitation in sentencing a juvenile. This argument, while partially correct, does not invalidate the sentence imposed. The Supreme Court has reviewed changes in the juvenile sentencing philosophy between 1962 and 1984 and stated that "[w]hile it is true that some rehabilitative tools were removed from the juvenile penalty scheme in 1984 ... the Juvenile Delinquency Act does not completely reject rehabilitative objectives." Id. at 298, n. 2. It follows then that rehabilitation is one goal of the juvenile justice system, but it is not the only goal. Here, the record shows that the district court did consider rehabilitation in imposing the sentence. The judge heard argument on rehabilitation, reviewed the report submitted by Dr. DeFrancesco, reviewed the Presentence Report, and considered the recommendations from probation. The judge also considered the nature of the case and the fact that J.L.B. will be returned to Mexico, making probation unavailable. Accordingly, the sentence is affirmed.
 
 
 21
 AFFIRMED.
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. See Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 It is worth noting that in this appeal J.L.B. does not argue that his statement was involuntary