UNITED STATES of America, Plaintiff–Appellee,

v.

Juvenile, L.M.K., Defendant–Appellant.

No. 97–50312.

United States Court of Appeals, Ninth Circuit.

Argued May 7, 1998.

Decided July 16, 1998.

Steven F. Hubachek, Assistant Federal Public Defender, San Diego, California, for defendant-appellant.

Jeffrey A. Taylor, Assistant United States Attorney, San Diego, California, for plaintiff-appellee.

Before: CANBY, NOONAN and KLEINFELD, Circuit Judges.

NOONAN, Circuit Judge:

Lisa, a juvenile, appeals her adjudication as a juvenile delinquent and her confinement until her eighteenth birthday, April 21, 1999.

## FACTS AND PROCEEDINGS

Lisa's experience of federal law enforcement began about 5:00 a.m., the morning of January 27, 1997 when she was a passenger in a car driven by Maria Del Refugio Medina–Sanchez returning to the United States from Tijuana. Lisa was 15, another girl in the car was 14, Medina was an adult. The three indicated they had been "partying." The car they were in had a license plate matching a number placed on "lookout" for heroin smuggling. The three were escorted to the security office.

A pat down found three packages of heroin concealed in Lisa's pants and two more packages in Medina's pants. The three were detained until Customs Senior Special Agent Peter Darvas arrived at about 6:20 a.m. Darvas gathered information about the incident but took until 8:30 a.m. before he spoke with Lisa for the first time to establish identification information and her condition. He attempted to get her parents' address or phone number, but she said she lived with Medina and did not know how to contact her parents. She added that she was a methamphetamine user and had used methamphetamine before returning from Mexico. After the initial questioning, Darvas placed Lisa under arrest.

At approximately 11:30 a.m. Darvas resumed his interview of Lisa. Lisa signed a waiver of rights at 11:51 a.m. Approximately ten to fifteen minutes into the interview, she gave Darvas her father's telephone number. When Darvas asked if she wanted him to call her father or go on with the questioning, she said she did not want him called and agreed to continue. Darvas did not call her father.

Lisa informed Darvas that she had not slept since the night before and had not eaten since 8:00 a.m. the day before. She stated Medina had given her the packages that she had brought into the United States. The interview ended around 1:00 p.m. At about 2:30 p.m. Darvas interviewed the other

girl. At some time after 4:00 p.m. both girls were transferred to San Diego Juvenile Hall. They were arraigned before a magistrate judge at 2:00 p.m. the following day.

Lisa moved to suppress the incriminating statements made to Darvas, to dismiss the information, and to suppress the evidence seized. The motions were denied. After a bench trial, the district court found her to be a juvenile delinquent. Her motion for a new trial was denied.

Lisa appeals.

*The Government's Failure to Arraign Lisa Forthwith.* The Federal Juvenile Delinquency Act, 18 U.S.C. § 5033, provides that a juvenile taken into custody "shall be taken before a magistrate forthwith" and that "[i]n no event shall the juvenile be detained for longer than a reasonable period of time before being brought before a magistrate." "Forthwith" means "with dispatch" or "immediately." The term is slightly qualified by the statute implying that there may be an elapse of "a reasonable period of time" before the arraignment.

■ In the present case no one could say that Lisa was arraigned forthwith. She was held 33 hours without being arraigned. The government produces no facts that would allow us to believe this delay was reasonable.

Testifying at the evidentiary hearing, Darvas said he was careful because of the significant amount of heroin involved. He failed to give any testimony showing how this extra care caused the delay; he did not even account adequately for the time between his arrival and his first interview of Lisa. Far from being careful to obey the command of the statute, he appears to have proceeded at a pace that was indifferent to the requirement of immediate arraignment.

We have on occasion accepted the government's excuses when the government showed exigent circumstances and did not use the defendant's pre-arraignment statement. *United States v. Doe,* 701 F.2d 819, 824 (9th Cir.1983) (*Doe I*). We have found clear violation of the requirement where the delay was 36 hours and exigent circumstances were not present. *United States v. Doe,* 862 F.2d 776,

780 (9th Cir.1988) (*Doe II*). Section 5033 was violated.

■ Lisa also objects that Darvas did not make reasonable efforts to notify her parents. She, of course, prevented him from doing so at first. She later agreed to continue the interview with him without his calling her father, but the statute does not permit the juvenile to waive notification of the parents. Darvas should have called her father. His failure to do so is a second violation of § 5033.

■ Where the government violates the requirements of the Juvenile Delinquency Act, this court considers whether the government's conduct was so egregious as to deprive the juvenile of his or her right to due process of law. *Id.* at 779. If the defendant's constitutional due process rights were violated, reversal is mandatory. *Id.* at 780. If not, the court considers whether the violation prejudiced the defendant. *Id.* at 779. If the defendant was prejudiced, we have discretion to reverse or to order more limited remedies. *Id.* at 780–81. We may also remand for a determination of prejudice if the record is insufficient to make a finding regarding prejudice. *Id.* at 781.

■ In this case neither failure of the government is of such an outrageous character as to have denied Lisa due process of law and require dismissal of the charge. While Lisa's statements should have been suppressed, we find that their admission was harmless. The officers discovered heroin concealed on Lisa's person before they committed the violations of § 5033. Her prosecution would have followed even without her statement, *see id.* at 783 (Wallace, J., concurring and dissenting), and it is more probable than not that the admission of her statements did not materially affect the determination of delinquency, *see United States v. Rahm,* 993 F.2d 1405, 1415 (9th Cir.1993).

Lisa also argues that the government should have collected and preserved evidence showing that she was intoxicated when she returned to the country at 5:00 a.m. on January 27. The evidentiary hearing that explored this point did not produce a preponderance of evidence that she was in fact

intoxicated. Darvas, for example, found her tired but not drunk or high. Lisa makes an inadequate showing that she was in a condition that would have put the government under any obligation to gather evidence showing she could not have intentionally imported the heroin.

Lisa also objects that the government distorted her trial by trying her before the other girl with the result that her friend said she would invoke the Fifth Amendment if called to testify at Lisa's trial. The government's intention was to go ahead with the other's case until Lisa in her own trial exonerated the other. No culpable distortion of the fact finding process has been demonstrated, and no need existed to have an evidentiary hearing on Lisa's allegation.

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**