UNITED STATES of America,
Plaintiff–Appellee,

v.

John DOE, a juvenile male,
Defendant–Appellant.

No. 98–50172.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 1998.

Decided March 17, 1999.

Michael Petrik, Jr. and Benjamin L. Coleman, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Daniel S. Drosman, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: BEEZER, TASHIMA and WARDLAW, Circuit Judges.

BEEZER, Circuit Judge:

The district court entered judgment in which John Doe ("Doe"), a juvenile, is determined to be a juvenile delinquent. The court found that Doe knowingly imported merchandise (marijuana) subject to seizure in violation of 18 U.S.C. § 545. On appeal, Doe challenges the sufficiency of the certification that allowed him to be prosecuted in federal court. Doe also asserts that his confession should be suppressed both because he requested counsel and because the government failed to notify his mother of his *Miranda* rights. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I

At approximately 8:00 a.m. on October 15, 1997, customs inspectors stopped the van Doe attempted to drive into California from Mexico. Inspectors discovered more than 100 pounds of marijuana in the van and detained Doe and his two companions traveling with him. Doe was placed in a holding cell.

Around 9:30 a.m., United States Customs Service Special Agent James Plitt ("Plitt") encountered Doe, introduced himself and informed Doe of the large amount of narcotics recovered from the van. Before Plitt could begin to explain the booking process or to interrogate Doe, Doe asked him, "What time will I see a lawyer?" Plitt responded that Doe could see an attorney within two days if the state prosecuted him and within one day if the federal government prosecuted him. Plitt advised Doe that he did not have to make any statements in the meantime, that Plitt would review Doe's rights with him in detail a little later and that, other than providing some preliminary biographical information, Doe did not have to make any statements.

Following an unsuccessful attempt to contact Doe's mother, Plitt left a message with a family member, explaining Doe's custody. At approximately 12:30 p.m., Doe's mother returned the call. Using a second family member as an interpreter, she spoke with Plitt. Plitt explained the circumstances under which Doe had been detained. Plitt did not inform her of Doe's *Miranda* rights.

Plitt took Doe to the interrogation room at approximately 2:00 p.m., formally arrested him and read him his *Miranda* rights. Doe indicated that he understood his rights and initialed an advice-of-rights form. Before Plitt could ask any substantive questions, Doe asked Plitt what would happen to his companions. Plitt explained that he could not answer that question until he had all of the facts. Doe inquired whether, if he answered Plitt's questions, Plitt could guarantee that his companions would be released. Plitt informed Doe that he could make no guarantees and that Doe's decision to answer any questions would have to be independent of any guarantees, deals or coercion. Doe asked whether any information he provided would assist his companions' release. Plitt reiterated his earlier answer. Over the course of the next 30–45 minutes, Doe answered Plitt's questions and explained his involvement in the smuggling. Plitt testified that Doe appeared somewhat nervous, but not frightened.

Between 4:00 and 4:30 p.m., Doe's mother arrived. Shortly thereafter, Plitt reviewed Doe's notice to appear in court, first with Doe alone and then with Doe and his mother. Plitt explained the notice and recommended that Doe seek counsel prior to his appearance. Plitt arranged for Doe to leave with his mother, instead of being taken to juvenile detention.

The government filed a three-count Superseding Information ("the Information"), signed by a Special Assistant United States Attorney, which charged Doe with juvenile delinquency for importing marijuana, possessing marijuana with intent to distribute, and importing merchandise subject to seizure. Attached to the Information was a Certificate signed by the United States Attorney, attesting that state juvenile court had "declined" to assume jurisdiction over Doe.

The district court denied Doe's motion to suppress his confession. Although the court concluded that Plitt's failure to notify Doe's mother about Doe's *Miranda* rights was a statutory violation, it determined that this error was harmless and that Doe's confession was knowing, intelligent and voluntary. Following a bench trial, the district court found Doe guilty beyond a reasonable doubt for importing merchandise subject to seizure and adjudged Doe a juvenile delinquent. The court sentenced Doe to serve time in a treatment center and placed Doe on probation until the conclusion of his minority.

## II

■ To prosecute a juvenile in federal court, the government must follow the certification procedures required by 18 U.S.C. § 5032.[1] Certification is a jurisdictional requirement. *See United States v. Doe ("Doe II ")*, 98 F.3d 459, 460 (9th Cir.1996). We review de novo whether a certification complies with the requirements of § 5032.[2] *See id.* We conclude that the government met the certification requirements here.

■ The Certificate recites that the state "declined" to prosecute Doe. Section 5032 requires that the state must "refuse[ ]" to prosecute a juvenile. Doe asserts that the use of "declined" rather than "refused" renders the certification invalid. We disagree. In applying § 5032, federal courts "refuse to

elevate form over substance." *United States v. White*, 139 F.3d 998, 1002 (4th Cir.), *cert. denied*, ── U.S. ──, 119 S.Ct. 343, 142 L.Ed.2d 283 (1998). In *United States v. Allen*, 574 F.2d 435, 438 (8th Cir.1978), the Eighth Circuit paraphrased § 5032 as requiring certification that the appropriate state court "declines jurisdiction." In *United States v. Hill*, 538 F.2d 1072, 1076 (4th Cir. 1976), the Fourth Circuit approved a § 5032 Certificate asserting that the state court "would decline to accept jurisdiction." The Certificate in the instant case was not deficiently worded.

■ Doe also asserts that the certification is invalid because the United States Attorney signed the Certificate but not the accompanying Information. We have held that the language of § 5032 and 28 C.F.R. § 0.57 are violated where a Certificate is signed by an Assistant United States Attorney rather than a United States Attorney. *See Doe II*, 98 F.3d at 461. In this case, however, the United States Attorney, the person "in whom the power to decide whether the United States will proceed against a juvenile is vested," *id.*, signed the Certificate. His signature on the Certificate insures that the duly authorized official decided to prosecute the juvenile in the federal system and fulfills the requirements of the statute and its accompanying regulation. *Cf. United States v. Wellington*, 102 F.3d 499, 504 (11th Cir.1996) (holding that where the "purpose of the certification requirement has been satisfied by an authorized person making the decision to file," the certification is valid). We will not create an additional requirement that the charging document must also be signed by an official authorized to sign the Certificate. The absence of the United States Attorney's signature on the Information does not invalidate the certification.

1. Pursuant to 18 U.S.C. § 5032, a "juvenile alleged to have committed an act of juvenile delinquency ... shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to the appropriate district court of the United States that ... [the] appropriate court of a State ... refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency...." Under the companion regulation, the Attorney General's office "is authorized to re-

delegate any function delegated ... under this section to United States Attorneys...." 28 C.F.R. § 0.57. Such a redelegation has been accomplished.

2. Although Doe first raises certification in his reply brief, his arguments are not waived because the issue is jurisdictional. *See Sanchez v. Pacific Powder Co.*, 147 F.3d 1097, 1100 (9th Cir.1998) (jurisdictional issues raised in a reply brief are not waived).

## III

 We reject Doe's argument that he invoked his Fifth Amendment right to have counsel present during the interrogation. There is no dispute as to the words Doe used: "What time will I see a lawyer?" We review de novo whether these words invoke the right to counsel. *See United States v. Ogbuehi,* 18 F.3d 807, 813 (9th Cir.1994). In particular, we examine whether a suspect "articulate[d] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States,* 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994).[3] We conclude that Doe did not invoke his right to have counsel present during interrogation.

 *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), protects a "suspect's 'desire to deal with the police only through counsel.' " *McNeil v. Wisconsin,* 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) (quoting *Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)). *Miranda* applies only where a suspect requests "the particular sort of lawyerly assistance that is the subject of *Miranda,*" namely, assistance during interrogation, not assistance in the subsequent judicial process. *McNeil,* 501 U.S. at 178, 111 S.Ct. 2204. A statement concerning an attorney made before interrogation begins is far less likely to be a request for attorney assistance during interrogation than a similar statement made during custodial interrogation. *See Grant–Chase v. Commissioner, New Hampshire Dep't of Corrections,* 145 F.3d 431, 436 n. 5 (1st Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 361, 142 L.Ed.2d 298

(1998); *see also United States v. Scurlock,* 52 F.3d 531, 537 (5th Cir.1995) (defendant's pre-interrogation request for an attorney "could reasonably be understood to be a recognition by the defendant of her need for an attorney in the future...."). Here, Doe questioned Plitt about an attorney before being read his *Miranda* rights, before being interrogated and even before biographical questioning began.[4] Plitt's response addressed when, in the course of the judicial process, Doe would be appointed counsel. We conclude that Doe's question was an inquiry regarding the time at which appointed counsel would be made available. Plitt was not required to forgo interrogation.

## IV

We next decide whether Plitt's failure to explain Doe's *Miranda* rights to Doe's mother before the interrogation violates the requirement of 18 U.S.C. § 5033 that arresting officers notify parents of the rights of the juvenile.[5] We determine that Plitt's failure to advise her of Doe's *Miranda* rights violates § 5033; however, we conclude that this violation was harmless and does not require suppression of Doe's confession.

## A

 Whether § 5033 requires an arresting officer to notify a juvenile's parents of the juvenile's *Miranda* rights prior to interrogation is a question of first impression. Section 5033 requires an arresting officer immediately to advise the juvenile of his legal rights and immediately to notify the juvenile's parents that the juvenile is in custody. It also requires the arresting officer to notify the juvenile's parents of the juvenile's rights

---

3. Doe argues in his reply brief that *Davis* does not apply to juveniles. Doe's failure to raise this in his opening brief constitutes a waiver, and we do not consider this issue. *See Sanchez v. Pacific Powder Co.,* 147 F.3d 1097, 1100 (9th Cir.1998).

4. We do not address whether Doe's statement, if given during interrogation or in direct response to having been read his *Miranda* rights, could reasonably be construed as a request for an attorney during interrogation.

5. The first paragraph of 18 U.S.C. § 5033 provides that:

> Whenever a juvenile is taken into custody for an alleged act of juvenile delinquency, the arresting officer shall immediately advise such juvenile of his legal rights, in language comprehensible to a juvenile, and shall immediately notify the Attorney General and the juvenile's parents, guardian, or custodian of such custody. The arresting officer shall also notify the parents, guardian, or custodian of the rights of the juvenile and of the nature of the alleged offense.

and of the nature of the alleged offense. Section 5033 does not identify which rights need be explained to parents or the timing of any such explanation.[6] We conclude that parental notification of the juvenile's *Miranda* rights must be given contemporaneously with the notification of custody.

The government argues that Congress did not intend to require parental notification of juveniles' pre-judicial rights, such as *Miranda*, when it modified § 5033. There is some support for this position. In 1967, the Supreme Court held that adjudications of juvenile delinquency "must measure up to the essentials of due process...." *In re Gault,* 387 U.S. 1, 30–31, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (internal quotation marks omitted). *Gault* concerned only "the right to notice of judicial proceedings," *Harris,* 93 F.3d at 585–86, not, as here, rights regarding pre-judicial proceedings. In 1974, Congress amended § 5033 in response to *Gault*'s concern with the lack of due process protections in juvenile proceedings. *See* S.Rep. No. 93–1101 (1974), *reprinted in* 1974 U.S.C.C.A.N. 5283, 5312. In doing so, Congress did not "extend *Gault*'s due process requirement to the pre-judicial stages of the juvenile process." *Doe III,* 155 F.3d at 1076. Congress may not have intended to address *Miranda* in promulgating the current version of § 5033.

In a related context, Congress in 1968 passed 18 U.S.C. § 3501, which addresses the admissibility of confessions in federal court. Whatever the impact of § 3501 on *Miranda,* it is "perfectly clear that Congress enacted § 3501 with the express purpose of legislatively overruling *Miranda* ...." *United States v. Dickerson,* 166 F.3d 667, 686 (4th Cir.1999). Thus, the argument continues, maintaining that § 5033 requires law enforcement officials to notify a juvenile's parents of that juvenile's *Miranda* rights imputes to Congress an intent to extend *Miranda* only six years after Congress attempted to overrule *Miranda.*

Nevertheless, we conclude that § 5033 requires the government to inform the juvenile's parents of the juvenile's *Miranda* rights. First, the text requires the arresting officer-not a subsequent official who might handle the judicial phases of the matter-to carry out all of the notification requirements listed in the lead paragraph of § 5033. The statute also requires immediate parental notification as to the existence of initial custody; failing to include *Miranda* information would undermine the value of such a requirement. Second, our interpretation of § 5033's parental notification requirement stresses that such parental communication "must have substantive content...." *United States v. Doe,* 862 F.2d 776, 779 (9th Cir. 1988) (*"Doe I"*). Advising the parent of the juvenile's *Miranda* rights prior to interrogation is among the most substantive information an arresting officer can communicate to the parent.

Third, courts have recognized that children need parental involvement during interrogation. For example, the Supreme Court has noted that unique concerns arise in the context of interrogating juveniles. *See, e.g., Gault,* 387 U.S. at 55, 87 S.Ct. 1428 ("special problems may arise with respect to [a juvenile's] waiver" of the right to have counsel present during questioning); *Haley v. Ohio,* 332 U.S. 596, 600, 68 S.Ct. 302, 92 L.Ed. 224 (1948) (stressing a minor's need for "counsel and support if he is not to become the victim first of fear, then of panic" during interrogation). We have expressed apprehension over "parents concerned with protecting the interests of their children" being left in the dark during interrogation. *Harris,* 93 F.3d at 585. The Seventh Circuit has noted that a "parent may significantly aid a juvenile in asserting his Fifth Amendment privilege." *United States ex rel. Riley v. Franzen,* 653

---

6. Our cases addressing notification have dealt with the government's failure to notify a parent immediately, not the failure to advise a parent of the juvenile's *Miranda* rights when promptly notifying a parent. *See, e.g., United States v. Doe,* 155 F.3d 1070 (9th Cir.1998) (en banc) (*"Doe III"*); *United States v. L.M.K.,* 149 F.3d 1033 (9th Cir.1998), *opinion amended on denial of rehearing,* 166 F.3d 1051 (9th Cir.1999); *Harris v.*

*Wright,* 93 F.3d 581 (9th Cir.1996). *United States v. White Bear,* 668 F.2d 409 (8th Cir.1982), did involve officers promptly contacting a parent but not explaining to the parent the juvenile's *Miranda* rights. The Eighth Circuit found no violation of § 5033. *See id.* at 411. The *White Bear* court, however, did not specifically discuss the issue.

**1168**

F.2d 1153, 1160 (7th Cir.1981). We conclude that § 5033 requires the arresting officer to inform parents of a juvenile's *Miranda* rights. To ensure that this requirement provides meaningful protection, we further hold that notifying a parent of the juvenile's *Miranda* rights must be given contemporaneously with the notification of custody.

### B

■ We next consider whether the government's violation of § 5033 affected Doe's waiver of his *Miranda* rights. We conclude, as a matter of law, that Doe's statements were properly admitted and that the violation was harmless.

■ Doe attempts to link the § 5033 violation to the *Davis* analysis, arguing that Plitt's failure to explain Doe's *Miranda* rights to his mother should be considered when determining whether Doe's request for an attorney was unequivocal. These inquiries, however, are unrelated. A "statement either is such an assertion of the right to counsel or it is not." *Davis v. United States,* 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (quoting *Smith v. Illinois,* 469 U.S. 91, 97–98, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984)). Because the *Davis* inquiry focuses on what "a reasonable police officer in the circumstances would understand the statement to mean," 512 U.S. at 459, 114 S.Ct. 2350, the failure to notify Doe's mother of his *Miranda* rights does not alter the statement's ambiguity.

■ Doe next argues that the violation prevented Doe's waiver of his *Miranda* rights from being voluntary, knowing and intelligent. We review for clear error the district court's finding of knowing and intelligent waiver and review its conclusion of voluntariness de novo. *See Doe III,* 155 F.3d at 1074. The validity of Doe's waiver depends on·the "totality of the circumstances," and the "lack of parental notification is one factor to consider...." *Id.* at 1073. Doe's age, background, experience and conduct are other factors relevant in applying the totality of the circumstances test. *See United States v. Bernard S.,* 795 F.2d 749, 751 (9th Cir.1986). In considering these factors, the district court found that there was "nothing done that would indicate any kind of coercion,

threats, promises or anything that would render the statement involuntary." The district court further found that Doe "was aware of his rights" and "knowingly and intelligently waived his rights and voluntarily made a statement for the specific intent of exculpating" his companions.

As to voluntariness, we consider the totality of the circumstances to determine whether the government obtained the confession by overriding Doe's will with physical or psychological coercion or with improper inducements. *See Derrick v. Peterson,* 924 F.2d 813, 817 (9th Cir.1990). The record supports the district court's factual findings that the atmosphere was not coercive and that Plitt "played it very straight ... and did not do anything to encourage a statement." As to the knowledge and intelligence of the waiver, we consider whether a juvenile's statements were "the product of ignorance of rights or of adolescent fantasy, fright or despair." *Doe III,* 155 F.3d at 1073 (quoting *Gault,* 387 U.S. at 55, 87 S.Ct. 1428). Nothing in the record shows any error in the district court's finding that Doe understood the nature and consequences of the rights he abandoned. We hold that Doe's waiver was knowing, intelligent and voluntary.

■ Although the § 5033 violation is not a due process violation, it may serve as an independent basis for suppression. *See Doe III,* 155 F.3d at 1073. Initially, we inquire whether the violation caused the juvenile to confess. *See Doe I,* 862 F.2d at 781 (considering whether a "confession came in part as a result" of the violation of § 5033). Only if the violation was a cause *of* the confession does a court look to the prejudice caused *by* the confession.

■ The district court found that if Plitt had informed Doe's mother of Doe's right to remain silent, she could not, or would not, have done anything with this information. The court concluded that the error was harmless beyond a reasonable doubt. We accept the district court's finding and agree with its conclusion. Unlike *Doe I,* where the government's failure to notify the juvenile's parents "needlessly isolated this juvenile in a strange environment[,] deprived him of support and counsel" during interrogation and

"may have lead directly to his post-arrest confessions," 862 F.2d at 781, the violation here did not cause or even contribute to Doe's decision to confess. The failure to notify Doe's mother of his *Miranda* rights was harmless. *See United States v. Juvenile Male,* 74 F.3d 526, 530 n. 9 (4th Cir.1996) (finding no prejudice where the juvenile's parent would have been "unable to render substantive assistance," even if notification were immediate).[7]

## V

We hold that the certification for prosecution in federal court was sufficient, that Doe's request for an attorney was ambiguous and that the failure to notify Doe's parents of his *Miranda* rights was harmless error.

AFFIRMED.

---

**7.** We need not decide what impact admitting the confession had on Doe's adjudication as a juve- nile delinquent.