**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**John DOE, a juvenile, Defendant–**
**Appellant.**

No. 99–50250.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 2000

Filed July 20, 2000

---

Leslie S. Daniels, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Jennifer A. Schuman, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: BROWNING, NOONAN and SILVERMAN, Circuit Judges.

SILVERMAN, Circuit Judge:

18 U.S.C. § 5033 prescribes the procedure to be followed when a juvenile is arrested by federal law enforcement officers. First, the arresting officers must immediately advise the juvenile of his rights; second, they must immediately advise the juvenile's parents of the juvenile's rights; and third, they must bring the juvenile before a magistrate "forthwith." None of these procedures was followed in this case: The juvenile was not advised of his rights until over three hours after his arrest; the parents were not notified of their child's rights at all; and the juvenile was incarcerated for nearly a day and a half in a detention facility before being brought before a magistrate.

Although these statutory violations do not rise to the level of constitutional deprivations in the circumstances of this case, the failure to comply with the parental notification provision of § 5033 resulted in actual statutory prejudice—i.e., the juvenile lost the opportunity, envisioned by the statute, for parental advice about his rights prior to interrogation. Accordingly, the juvenile's confession should have been suppressed, and for that reason, we reverse.

## I. Background

On December 3, 1998, at approximately 12:35 a.m., "John Doe," a juvenile whom we will refer to as Rudolfo R., arrived at the San Ysidro port of entry seeking to enter the United States. He was a passenger in a pickup truck driven by an adult male. After the customs inspector noticed certain unusual features of the gas tank on the pickup, the truck was sent to secondary inspection. There, another inspector performed a closer examination of the gas tank which led him to suspect that contraband was being carried inside the tank. Rudolfo and the driver were taken to the detention area in the security office, where they were searched for weapons and contraband and then seated on benches. They were told that the truck was going to be examined. After a drug detection dog alerted to the gas tank, the inspector took the truck to have the gas tank removed for inspection.

At roughly 2:30 a.m., the truck was placed on a lift and the gas tank removed. Twenty to thirty minutes later, the Customs inspector found that the tank contained packages of marijuana. At between 2:50 and 3:00 a.m., the inspector notified the security officer that drugs had been discovered. Rudolfo and the driver were then moved from the benches in the security office and placed in detention cells.

At 6:30 a.m. U.S. Customs Service Special Agents Lawson and Udell met with Rudolfo. They asked him for his phone number and advised him that they needed to call his parents. Rudolfo gave them the number, and told them that his parents did not speak English but that his sister did. Agent Udell then left to call Rudolfo's sister, while Agent Lawson continued the personal history portion of the interview.

Agent Udell spoke to Rudolfo's sister, and informed her that Rudolfo had been arrested at San Ysidro for smuggling drugs. Agent Udell, however, did not inform Rudolfo's sister that Rudolfo would be undergoing interrogation, nor did he inform her of Rudolfo's *Miranda* rights. At that time, Udell did not know where Rudolfo was to be taken or when he would be appearing before a judge, but he prom-

ised that someone would call back with that information.

At 6:36 a.m., Agent Lawson read Rudolfo his *Miranda* rights. The agent read through the standardized form and asked Rudolfo if he understood his rights. Rudolfo stated that he did. Agent Lawson then asked Rudolfo to waive his rights by reading the waiver form and signing it. Rudolfo read and signed the form. He then made several statements indicating that he knew the truck contained drugs and that he had been offered $100 to go to Mexico with the driver and bring back the truck. The interrogation lasted approximately 15 to 20 minutes and ended at about 7:00 a.m. At that time, the U.S. Attorney's office was notified of Rudolfo's arrest. After fingerprinting and processing, Rudolfo was booked into a juvenile facility. He was not booked into the primary facility used by federal authorities in the San Diego area, the Metropolitan Correctional Center (MCC), because that facility does not accept juveniles.

It would not be until the next day, however, that Rudolfo was brought before a magistrate judge. This was because of a U.S. Marshals Service policy in San Diego that individuals not booked into the MCC can be brought to the courthouse only between 7 and 8 a.m. By the time Rudolfo had been booked into the juvenile facility, this time had already passed. Despite a request by a U.S. Customs Service Senior Special Agent, no exception was made for the juvenile. Rudolfo was not brought before a magistrate until the next day, 10:30 a.m. December 4, 1998, nearly 32 hours after his arrest.

Rudolfo moved to suppress his statements as having been obtained in violation of 18 U.S.C. § 5033, the procedures required upon the arrest of a juvenile. The district court held that the government violated the statute by failing to inform Rudolfo's parents that he was "going to be interviewed and that he ha[d] certain rights." The district court stated that "[t]he most significant violation that ...

occurred here is the fact that the juvenile was not taken before the magistrate forthwith, and that the juvenile was detained for a period longer than a reasonable period of time before being brought before a magistrate." Nevertheless, the district court denied the motion to suppress, ruling that, although the government had violated the statute, the violations did not rise to the level of a due process violation or cause prejudice. After a two day trial Rudolfo was adjudged a juvenile delinquent for having committed importation of a controlled substance in violation of 21 U.S.C. §§ 952, 960, and sentenced to confinement for 18 months and probation until he reached the age of 21. He now argues that the district court erred in failing to dismiss the charges or suppress his statements.

## II. Analysis

Title 18 U.S.C. § 5033 states:

### Custody prior to appearance before magistrate

Whenever a juvenile is taken into custody for an alleged act of juvenile delinquency, the arresting officer shall immediately advise such juvenile of his legal rights, in language comprehensible to a juvenile, and shall immediately notify the Attorney General and the juvenile's parents, guardian, or custodian of such custody. The arresting officer shall also notify the parents, guardian, or custodian of the rights of the juvenile and of the nature of the alleged offense.

The juvenile shall be taken before a magistrate forthwith. In no event shall the juvenile be detained for longer than a reasonable period of time before being brought before a magistrate.

Rudolfo argues that the government violated virtually every aspect of 18 U.S.C. § 5033. He asserts that the government failed to immediately notify him of his rights, failed to immediately notify his parents, failed to inform his parents that he

had certain *Miranda* rights and failed to bring him before a magistrate forthwith.

In *United States v. Doe*, 862 F.2d 776 (9th Cir.1988) (*Doe II* ), this court set out the framework in which claims under 18 U.S.C. § 5033 are to be addressed:

> First, we address whether the government violated the requirements of the Juvenile Delinquency Act. If it did, we reach the second question: whether the government's conduct was so egregious as to deprive [the juvenile defendant] of his right to due process of law. If it was not, we reach the third question: was the violation harmless to the juvenile beyond a reasonable doubt?

*Id.* at 779 (citations omitted).

■ Claims regarding whether the juvenile has been advised of his rights "immediately" or whether the juvenile's parents were notified "immediately" turn on the legal interpretation of "immediate," and therefore de novo review is appropriate. *United States v. Frega*, 179 F.3d 793, 802 n. 6 (9th Cir.1999). The question of whether a juvenile's parents have been properly notified pursuant to § 5033 is a predominantly factual question, and is reviewed for clear error. *Doe II*, 862 F.2d at 779. The question of whether the juvenile has been arraigned forthwith without unreasonable delay is a mixed question of law and fact reviewed de novo. *Id.*

## A. *Section 5033 Violations*

### i) When was Rudolfo in custody?

As many of the issues raised depend on exactly when the juvenile was taken into custody, it is necessary to first establish this point in the timeline. The district court did not make a definitive finding on the record regarding this fact.

■ To determine when Rudolfo was arrested and taken into custody, we must determine when a reasonable person "would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) While the government has more latitude to detain persons in a border-crossing context, this latitude only applies during the time of border searches. *See, e.g., United States v. Ogbuehi*, 18 F.3d 807, 812–13 (9th Cir.1994). Although Rudolfo was not in custody at the time he was escorted to the security office to await the results of the examination of the pickup, once the marijuana had been found and Rudolfo was placed in a locked cell, no reasonable person would have believed he was free to leave. Therefore, Rudolfo was placed in custody no later than 3:00 a.m.

### ii) Was Rudolfo immediately advised of his rights?

■ It is undisputed that Rudolfo was not read his *Miranda* rights until 6:36 a.m. At that point, he had been in custody for three and a half hours. Although there is a dearth of case law interpreting "immediately" in the context of 18 U.S.C. § 5033, a three and a half hour delay simply does not comport with the plain meaning of the word. Furthermore, no argument or showing has been made that exigent circumstances or other valid reasons caused the delay. We hold that the delay violated 18 U.S.C. § 5033.

### iii) Were Rudolfo's parents immediately notified?

■ It is undisputed that the government did not attempt to notify Rudolfo's parents until three and a half hours after he was placed in custody. The government notes, as the district court found, that the agents sought to contact Rudolfo's parents as soon as they started to talk to the juvenile. While this factual finding is not clearly erroneous, it does not address the issue that notification should have been attempted immediately after the juvenile was placed in custody. The statute identifies custody as the trigger requiring notification, not interrogation.

As discussed above, the three and a half hour delay violated § 5033's requirement that a juvenile be advised of *his* rights

"immediately." There is no reasoned basis for interpreting that term differently in the context of § 5033's *parental* notification requirement. We therefore hold that the government's delay in attempting to contact Rudolfo's parents violated 18 U.S.C. § 5033.

### iv) Were Rudolfo's parents notified of his *Miranda* rights?

In *United States v. Doe*, 170 F.3d 1162, 1166 (9th Cir.1999) (*Doe IV*), we held that 18 U.S.C. § 5033 requires the government to advise a juvenile's parents of his *Miranda* rights. The district court in the instant case found—indeed, it is undisputed—that the government failed to notify Rudolfo's parents (through his sister) of his *Miranda* rights. The court's factual finding is not clearly erroneous.

### v) Was Rudolfo brought before a magistrate forthwith?

■ Thirty-one and a half hours elapsed between the time Rudolfo was taken into custody at 3:00 a.m. on December 3, 1998, and the time he was brought before a magistrate at 10:30 a.m. on December 4, 1998. The district court found this delay to be unreasonable under 18 U.S.C. § 5033.

Title 18 U.S.C. § 5033 requires that a juvenile defendant be brought before a magistrate "forthwith." " 'Forthwith' means 'with dispatch' or 'immediately.' " *United States v. L.M.K.*, 149 F.3d 1033, 1035 (9th Cir.1998), *as amended* 166 F.3d 1051. Thirty-one and a half hours is not forthwith. *See id.* (33 hour delay violates § 5033); *Doe II*, 862 F.2d at 780 (36 hours delay violates § 5033). Section 5033 is qualified, however, by the implication that "there may be an elapse of a 'reasonable period of time' before the arraignment." *L.M.K.*, 149 F.3d at 1035. In *United States v. Doe*, 701 F.2d 819, 824 (9th Cir. 1983) (*Doe I*), we held a 34 hour delay to be reasonable where no magistrate judge was available, the agents were extremely busy with urgent cases, including a preg-

nant woman and other women with infants and small children, and the government agreed not to use the pre-arraignment statement of the defendant. *Id.*

In the present case, however, the record does not reveal any extenuating circumstances. "[M]ere facts of arrest and transportation of [the defendant] from [the Border Patrol] processing facility to the juvenile detention center" do not render a delay reasonable. *Doe II*, 862 F.2d at 780. More troubling, however, is that Rudolfo's arraignment was delayed *another* 24 hours or so after his arrival at the juvenile facility because of the U.S. Marshals Service policy not to accept non-MCC prisoners at the courthouse except between 7:00 and 8:00 a.m. Even after being advised that Rudolfo was a juvenile, no exception was made.

This policy is particularly troubling in that not only does the U.S. Marshal have no special procedure for the *expedited* handling of juveniles, this policy actually, albeit unintentionally, *delays* a juvenile's appearance in court. As the supervisory deputy testified, all prisoners, *except juveniles*, are normally booked at the MCC. Those prisoners are then brought throughout the day to the courthouse for arraignment. Juveniles, on the other hand, because they cannot be booked into the MCC, are always subject to the 7 to 8 a.m. rule. This situation is more egregious than simply being "indifferent to the requirement of immediate arraignment." *L.M.K.*, 149 F.3d at 1035. Rather than "giv[ing] priority to the arraignments of juveniles in custody," *Doe I*, 701 F.2d at 824, the policy in the Southern District of California virtually assures that the arraignment of a juvenile will be delayed beyond that of a similarly situated adult. This policy plainly violates the Juvenile Delinquency Act.

As there are no reasonable extenuating circumstances for the thirty-one and a half hour delay, we affirm the district court's ruling that the government violated 18

U.S.C. § 5033 by failing to bring Rudolfo before a magistrate forthwith.

## B. *Due Process*

 Having determined that the government violated 18 U.S.C. § 5033, we next consider whether these violations were "so egregious as to deprive [the juvenile] of his right to due process of law." *Doe II*, 862 F.2d at 779. Due process is denied when the violation of § 5033 adversely effects the fundamental fairness of the proceedings. *Doe I*, 701 F.2d 819, 822

 A juvenile's waiver of *Miranda* rights, like an adult's waiver of *Miranda* rights, is reviewed on the totality of the circumstances, including the background, experience, and conduct of the defendant. *United States v. Doe*, 155 F.3d 1070, 1073 (9th Cir.1998) (*Doe III* ). Lack of parental notification is one factor to consider. *Id.*

> For a waiver of rights to be valid it must be voluntarily, knowingly, and intelligently given ... A waiver is voluntary if ... the confession was the product of free and deliberate choice rather than coercion or improper inducement. A waiver is knowing and intelligent if ... it is made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*Id.* at 1074 (citation and internal quotations omitted). A district court's conclusion that the waiver was knowing and intelligent is reviewed for clear error. *Id.* The court's finding that the waiver was voluntary is reviewed de novo. *Id.*

 The district court found that Rudolfo understood the rights being read to him, understood the gravity of the situation, and had previous contacts with law enforcement and therefore was not unfamiliar with his rights. There are no facts suggesting that Rudolfo did not or could not understand the rights he was waiving, and the record supports the district court's determination. The district court did not

clearly err in finding that Rudolfo knowingly and intelligently waived his rights.

The circumstances surrounding the waiver do not suggest coercion or improper inducement. Rudolfo was not subjected to a lengthy, exhausting interrogation. There are no allegations of threats or promises. Nor are their any allegations that the delays and other violations that happened in this case were intended to break his will or that they did. Rudolfo's waiver was voluntary.

 Although Rudolfo was not advised of his rights until three and a half hours after having been taken into custody, he was advised of them before he made his inculpatory statements. That is the critical thing. As Rudolfo was advised of his rights before his interrogation, the delay does not constitute a due process violation.

The three and a half hour delay in attempting to contact Rudolfo's parents and the subsequent failure to notify them of Rudolfo's *Miranda* rights must be considered when analyzing whether Rudolfo's due process rights were violated. In the totality of the circumstances, however, this imperfect notification did not rise to the level of a Constitutional violation. *Cf. Doe IV*, 170 F.3d at 1168. We consider later on whether this delay nevertheless prejudiced Rudolfo's statutory rights.

 Likewise, while the thirty-one and a half hour delay in bringing Rudolfo before a magistrate was a clear violation of § 5033, his confession came only three and a half hours into the delay. The government did not attempt to further interrogate him before taking him before a magistrate, and it did not seek to use any statements he may have made after he was booked into the juvenile facility. In the absence of any evidence that the delay was deliberate, used to gain undue advantage or influence over the juvenile, or otherwise prejudicial we cannot find that the government's conduct was so egregious as to rise to the level of a due process violation.

## C. Harmless Error

 "If the statutory violations did not rise to the level of constitutional violations but nonetheless prejudiced [the juvenile defendant], we have discretion to reverse or to order more limited remedies so as to ensure that [the defendant's] rights are safeguarded and the will of Congress is not thwarted." *Doe II*, 862 F.2d at 780–81. Suppression of the statements may be appropriate if the violation was not harmless to the juvenile beyond a reasonable doubt. *Doe IV*, 170 F.3d at 1168. The first inquiry is whether the statutory violation was a cause of the juvenile's confession. *Id.* "Only if the violation was a cause of the confession does a court look to the prejudice caused by the confession." *Id.*

### i) The failure to notify Rudolfo's parents of his *Miranda* rights.

In considering the effect of the government's failure to notify Rudolfo's family of his *Miranda* rights, the district court stated:

> I also find, though, that the parents didn't necessarily have the right at that time to speak to their child. Let's assume that the officer had advised the parents that, or the sister, that [Rudolfo] was going to be interviewed and that his rights were going to be read to him and what the rights were.
>
> I have found no case which says that in fact at that moment the officer had to give the telephone to the parents, put the juvenile on the phone with the parents and have the parents talk to the juvenile at that point.
>
> In fact, there's a case in the Ninth Circuit that says that the parents don't have a right to be present during the interview of a juvenile. And that is the case of *Derrick v. Peterson.*
>
> So in that sense, the parents could not be present at the time that the interview was to take place.

 The government argues that the failure to notify Rudolfo's parents of his *Miranda* rights was harmless because Rudolfo's parents had no right to be present for the interrogation or to speak to the juvenile before the interrogation. The government contends that even if his parents had been properly advised, they had no right to advise him to remain silent, and therefore any error was harmless. This argument is premised upon a misreading of *Derrick v. Peterson*, 924 F.2d 813, 819 (9th Cir.1990).

In *Derrick* we held only that there was no requirement that a parent be *present* for a juvenile's confession to be valid. *Id.* Holding that a parent or guardian's presence is not required, however, is not the same as saying they do not have the right to participate. In fact, this court, the Supreme Court, and the Seventh Circuit have specifically suggested that "children need parental involvement during interrogation." *Doe IV*, 170 F.3d at 1167–68 (citing *In re Gault*, 387 U.S. 1, 55, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Haley v. Ohio*, 332 U.S. 596, 600, 68 S.Ct. 302, 92 L.Ed. 224 (1948); *Harris v. Wright*, 93 F.3d 581, 585 (9th Cir.1996); *United States ex rel. Riley v. Franzen*, 653 F.2d 1153, 1160 (7th Cir. 1981)). The requirement that parents be advised of their arrested child's rights surely is not for the purpose of imparting general information in the abstract. Congress obviously intended that parents be informed of their children's rights so that they can assist their children in a meaningful way. Our holding in *Doe IV* that § 5033 requires that parents be informed of their child's *Miranda* rights contemporaneously with the notification of custody would be completely meaningless if those same parents did not have the right to advise and counsel their children before police questioning. *Id.* at 1168. We therefore hold that if the juvenile or his parents request to communicate and confer with each other prior to questioning, such a request may not be unreasonably refused.

 The question remains whether the government's failure to advise Rudolfo's

family of his *Miranda* rights interfered with his right to remain silent.

Rudolfo's sister, who was acting on behalf of Rudolfo's non-English speaking parents when the agents called, testified that had she been advised of Rudolfo's *Miranda* rights, she would have "advised him to just remain quiet until we knew what was going on and find out all the legalities, just so we know where he stands." On cross examination, she clarified that by "we" she meant her parents and a public defender or other legal representative. Rudolfo's father testified in a similar manner.

The district court specifically found Rudolfo's sister "very credible." This finding is not clearly erroneous. In contrast to *Doe IV*, 170 F.3d at 1169, where the district court found that even had the defendant's mother been advised of his rights she could not or would not have done anything with the information, in the instant case there is undisputed testimony that, had they been properly advised, Rudolfo's family *would* have advised him not to waive his rights. In the absence of any evidence to the contrary, we cannot say beyond a reasonable doubt that the government's violation did not interfere with Rudolfo's right to remain silent.

The last question is whether Rudolfo was prejudiced by the introduction of his statements into evidence at trial. *Doe IV*, 170 F.3d at 1168. There is no doubt that he was; it was the sole source of proof of his knowledge of the drugs.

### III. Conclusion

The government failed to notify Rudolfo's parents of his *Miranda* rights as required by § 5033. The resulting statements used against him were highly prejudicial and should have been suppressed.[1]

Therefore, the decision of the District Court for the Southern District of Califor-

nia with regard to the motion to suppress is REVERSED. The adjudication of delinquency is REVERSED and this case is REMANDED for further proceedings not inconsistent with this opinion.

---

1. Having reversed the adjudication of delinquency, we need not reach the question of whether the government's further violations of 18 U.S.C. § 5033 were harmless.