UNITED STATES of America,
Plaintiff–Appellee,

v.

Female Juvenile (WENDY G.),
Defendant–Appellant.

No. 00–50306.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 16, 2000

Filed June 22, 2001

Shaun Khojayan, Federal Defenders, San Diego, California, for the defendant-appellant.

Gregory A. Vega, United States Attorney, and Bruce R. Castetter and Linda R. Frakes, Assistant United States Attorneys, San Diego, California, for the plaintiff-appellee.

Before: CANBY, McKEOWN, and PAEZ, Circuit Judges.

PAEZ, Circuit Judge:

When federal law enforcement officers take a juvenile into custody, 18 U.S.C. § 5033 requires that they notify the juvenile's parents of the custody and "of the rights of the juvenile." In several recent cases, we have clarified the meaning of § 5033. We have explained that "children need parental involvement during interrogation" and that the purpose of § 5033 is to provide "meaningful protection" of juveniles by facilitating such involvement. *United States v. Doe*, 170 F.3d 1162, 1167–68 (9th Cir.) ("*Doe IV*"), *cert. denied*, 528 U.S. 978, 120 S.Ct. 429, 145 L.Ed.2d 335 (1999). Accordingly, we have held that law enforcement officers must notify parents of their child's *Miranda* rights and that such notification must occur prior to interrogation, when notification of the juvenile's *Miranda* rights has purpose. *Id.* at 1166–68. And we have held that, if parents ask for an opportunity to advise and counsel their child, the request cannot unreasonably be denied. *United States v. Doe*, 219 F.3d 1009, 1017 (9th Cir.2000) ("*Doe V*").

We now hold that, in order for the juvenile's access to parental counseling to be meaningful, the parents must be informed that an opportunity for the parents and child to communicate prior to police questioning will be permitted. Because law enforcement officers interrogated Wendy G. without informing her mother that such an opportunity would be given and because Wendy G. suffered prejudice, we hold that her confession should have been suppressed, and we reverse the adjudication of delinquency.

I.

Wendy G. passed from Mexico into the United States through the Otay Mesa Port of Entry on February 1, 2000, at approximately 8:30 p.m., in a vehicle driven by another individual. Wendy G. and the driver were referred to secondary inspection. While their vehicle was being inspected, Wendy G. and the driver were

brought into the security office, where Customs inspectors conducted a pat-down search and completed personal search worksheets. In completing the worksheet for Wendy G., the inspectors obtained Wendy G.'s birthday and learned that she was a juvenile. The inspectors completed the worksheets at 8:45 p.m.

Shortly thereafter, Customs inspectors discovered marijuana in the vehicle. Wendy G. was placed in a holding cell, and United States Customs special agents were called in to interview Wendy G. and the driver.

At approximately 9:45 p.m., Agent Cynthia Johnson entered the holding cell and introduced herself to Wendy G. According to Agent Johnson, the Customs special agents had not reviewed the personal search worksheet and so, at this point, did not know that Wendy G. was a juvenile. After this initial contact, Agent Johnson took Wendy G. to an interview room, where a second Customs Special Agent, Agent Cardell Morant, joined them.

In the interview room, Agent Johnson began to review a pre-rights advisement checklist with Wendy G., asking her whether she felt all right, whether she would like a drink of water, and so on. In the course of this pre-rights advisement questioning, Agent Johnson learned that Wendy G. was seventeen years old.

Agent Johnson knew that, in cases involving juvenile arrestees who might be subject to federal prosecution, federal agents are required to contact a parent prior to advising the juvenile of his or her *Miranda* rights. She therefore decided that they should take a break so that Agent Morant could "quick telephone her mother."

Although the agents did not tell Wendy G. that they intended to call her mother or their reasons for doing so, the agents asked her for her mother's telephone number, which Wendy G. provided. Agent Morant then called Wendy G.'s mother from a separate room. The record places this call at slightly after 10:00 p.m. Agent Morant testified that the conversation for the most part was one-sided. He informed Wendy G.'s mother of the nature of the offense for which Wendy G. was in custody and informed her of Wendy G.'s *Miranda* rights by reading from a standardized *Miranda* advice of rights card. He testified that he told Wendy G.'s mother:

> I was at the Otay Mesa port with her daughter ..., who was a passenger in a vehicle that contained marijuana. I needed to—I informed her mother that I needed to speak to Wendy regarding that matter but, before I did, her rights would be read to her....
>
> I would have to read Wendy her rights and I was going to read the rights that would be read to Wendy to her, meaning the mother ...
>
> I started at the top line, meaning where "You have the right to remain silent." I read each one, with a brief pause after each one to give her the opportunity to ask me any questions she may have had about what I had just read. After that, I stopped, asked her if she understood all of that. I then said, "Now I'll read to you the waiver of rights," after which I informed her—explained to her what that meant, that that meant that Wendy would be willing to talk to us, no one promised her anything, no one threatened her in order for her to do so. And if she wanted to speak to us, then that was fine also.

When asked at the suppression hearing whether Wendy G.'s mother said anything during the telephone call, Agent Morant testified that Wendy G.'s mother "just asked if she was all right" and asked him where she would be able to see her daugh-

ter. In response to the latter question, he testified that he "gave her directions to the Federal Building and told her the time that Wendy would be there the next day." Agent Morant did not inform Wendy G.'s mother that she could communicate with her daughter prior to questioning. When Wendy G.'s mother testified, she was asked what she said or did in response to Agent Morant's call, to which she responded, "Well, I couldn't do anything. He only gave me the address so that I could come to court the following day at 8:00 in the morning."

At 10:10 p.m., Agent Morant returned to the interview room where Wendy G. was held. Agent Morant reported to Agent Johnson that "he had talked to her mother and read the *Miranda* [rights] to her mother over the phone." The record does not suggest that the agents told Wendy G. anything about Agent Morant's call to her mother. Agent Johnson immediately read Wendy G. her *Miranda* rights. At 10:12 p.m., Wendy G. signed a statement waiving her *Miranda* rights and confessed to knowledge of and an active role in the transportation of the marijuana found in the vehicle.

Wendy G. was arrested and charged with two counts of juvenile delinquency. After an attorney was appointed to represent her, she moved to suppress the confession on the grounds that the confession was obtained in violation of § 5033 because parental notification was not timely and that the notification was substantively inadequate.

Following an evidentiary hearing, the district court denied the motion to suppress. The district court found that, as soon as Wendy G. was referred to secondary inspection, at 8:45 p.m., she was "definitely not free to go" and that, at that time, the Customs inspectors had information that she was a juvenile. The district court took judicial notice of the fact that the Otay Mesa port is an extremely busy port of entry and that various exigencies of the border inspection process made earlier parental notification impractical. The district court therefore held that the amount of time that elapsed between Wendy G.'s referral to secondary inspection at about 8:30 p.m. and the telephone call to her mother at 10:00 p.m. did not violate § 5033. The district court also found that the confession was not caused by any delay and suggested that, if there was error, it was harmless.

With respect to the substance of Agent Morant's telephone call to Wendy G.'s mother, the district court held that it satisfied the requirements of § 5033. The district court acknowledged uncertainty concerning the dictates of § 5033, but expressed skepticism that § 5033 should be interpreted in any way that would "invit[e] anything"—*i.e.,* invite parents to seek involvement—because parental involvement could make things "very difficult for law enforcement." *See* Transcript of Motion Hearing, March 27, 2000, at 53.[1] Instead, the district court was of the view that, as long as the parental notification "let[s] the parent know what's going to happen to the kid who's now in custody," the dictates of § 5033 have been met. According to the district court, "[t]hat's the only thing that makes sense." Transcript of April 14, 2000 Hearing, at 117.

---

**1.** *See also* Transcript of Motion Hearing, April 14, 2000, at 119 ("I see nothing but problems with this whole thing of putting the parent as a person that must be involved in the waiver ... there's a real problem when you bring third parties into the waiver"); *id.* at 125 ("throwing a parent or third party into this is nothing that I can see but a problem for a law enforcement officer trying to figure out, [w]hat am I supposed to do now?").

After the district court denied the motion to suppress, Wendy G. entered a conditional plea of guilty on both counts of juvenile delinquency, reserving her right to appeal the denial of her motion to suppress. Wendy G. filed a timely notice of appeal.

## II.

We recently summarized the analytical framework for considering Juvenile Delinquency Act[2] claims in *United States v. Juvenile (RRA–A)*, 229 F.3d 737 (9th Cir. 2000). There, we explained:

> This circuit has a three-part test for reviewing Juvenile Delinquency Act claims. We first ask whether the government violated the Act's requirements. [ ] If so, we then inquire as to whether the government's conduct was so egregious that it deprived the juvenile of due process of law. [ ] If the answer is yes, reversal is required. [ ] If the answer is no, we must still decide whether the error was prejudicial. [ ] If the defendant was prejudiced, and irrespective of whether the government's conduct undermined the fundamental fairness of the proceedings, we have discretion to reverse the conviction so as to ensure that the "prophylactic safeguard for juveniles not be eroded or neglected . . ." [ ]

*Id.* at 744 (internal citations omitted).

We first address Wendy G.'s claim that Customs officials did not provide timely notification to her parents that she was in custody and of her rights. We then address her claim that the notice to her mother was substantively deficient. Finally, because we find that Wendy G.'s statutory rights were violated, we turn to the question of constitutional or statutory prejudice. .

## A.

### Timely Parental Notification

Section 5033 requires that federal law enforcement agents notify the parents of a juvenile's rights "immediately" after a juvenile is taken into custody. We review *de novo* a district court's ultimate determination that notification was "immediate." *Doe V*, 219 F.3d at 1014. Whether a suspect is "in custody" at a particular time is a mixed question of law and fact, which we also review *de novo*. *Thompson v. Keohane*, 516 U.S. 99, 112–113, 116 S.Ct. 457, 465, 133 L.Ed.2d 383 (1995).

■ We find no clear error in the district court's finding that Wendy G. was not free to go once the Customs inspectors discovered marijuana in the vehicle in which Wendy G. was a passenger and then placed her in a holding cell. We conclude that at this point Wendy G. was in custody. *See Doe V*, 219 F.3d at 1014. At the earliest, this occurred shortly after 8:45 p.m., although the record does not establish the exact amount of time that elapsed between the Customs' inspectors' referral of Wendy G. to secondary inspection and their placement of her in the holding cell. Because her mother was notified at approximately 10:00 p.m., the delay between custody and parental notification was at most a little over one hour.

In *Doe V*, we held that a delay of three and one-half hours "does not comport with the plain meaning" of the word "immediately." *Id.* We suggested, however, that even a delay of that length could be excused if "exigent circumstances or other valid reasons caused the delay." *Id.*

■ Here, the delay caused by the Customs inspectors' decision to call in Cus-

---

2. 18 U.S.C. §§ 5031–5037.

toms special agents to conduct a criminal investigation and by the lapse in time before the agents arrived on the scene to handle the investigation was not unreasonable. We also note that, while the Customs inspectors waited for the agents to arrive, they did not attempt to interrogate Wendy G. Moreover, after Agent Johnson assumed responsibility for the investigation, she stopped the interview process as soon as she discovered Wendy G.'s juvenile status in order to notify Wendy G.'s mother. Based on all the facts of this case, we conclude that the approximate one-hour delay in notifying Wendy G.'s mother did not constitute a violation of § 5033.

## B.

### Adequate Parental Notification

When a juvenile has been taken into custody, § 5033 instructs federal law enforcement officers to notify the juvenile's parents not only of the custody, but also of "the rights of the juvenile." The statute, however, does not specify which rights or when or how those rights must be conveyed to the parents.

In several recent cases, we have been guided by common sense and the evident purpose of the parental notification requirement in interpreting the provision. In *Doe IV,* 170 F.3d at 1167–68, we addressed, for the first time, whether § 5033 requires that parents be notified of the juvenile's rights in pre-judicial proceedings, such as pre-interrogation *Miranda* rights. In addressing this question, we reasoned that the statute's requirement of immediate parental notification must have a purpose, and that "failing to include *Miranda* information would undermine the value of such a requirement." *Id.* Elaborating on the purpose of the notification, we noted long-standing judicial recognition that "children need parental involvement during interrogation." *Id.* And, fol-

lowing prior statements of this court that the parental communication "must have substantive content," *United States v. Doe,* 862 F.2d 776, 779 (9th Cir.1988) ("*Doe I* "), we concluded that advisement of *Miranda* rights "is among the most substantive information an arresting officer can communicate." *Doe IV,* 170 F.3d at 1167. Accordingly, we held that § 5033 requires federal law enforcement officers to advise the parents of the juvenile's *Miranda* rights. We further held that law enforcement officers must provide this information "contemporaneously with the notification of custody." *Id.* at 1168. The notification requirements, we explained, would be construed to "ensure that [the parental notification] requirement provides meaningful protection." *Id.*

In *Doe V,* we responded to an argument that the government's failure to advise parents of a juvenile's *Miranda* rights prior to interrogation was harmless error because the parents "had no right to advise [the juvenile] to remain silent." 219 F.3d at 1017. In addressing that argument, we made explicit what was implicit in *Doe IV:*

> The requirement that parents be advised of their arrested child's rights surely is not for the purpose of imparting general information in the abstract. Congress obviously intended that parents be informed of their children's rights so that they can assist their children in a meaningful way. Our holding in *Doe IV* that § 5033 requires that parents be informed of their child's Miranda rights contemporaneously with the notification of custody would be completely meaningless if those same parents did not have the right to advise and counsel their children before police questioning.

219 F.3d at 1017. Accordingly, we rejected the government's contention that failure to advise the parents of *Miranda* rights

never could prejudice the juvenile. We held that "if the juvenile or his parents request to communicate and confer with each other prior to questioning, such a request may not be unreasonably refused." *Id.*

Finally, in *RRA–A*, we again reiterated that "access to meaningful support and counsel" are the touchstone of adequate parental notification of rights. 229 F.3d at 746. There, the juvenile was a foreign citizen and his parents could not be contacted. We required in such circumstances that law enforcement notify consular officers. *Id.*

 We hold that the parental notification in this case was not reasonably calculated to serve the objectives of § 5033, as interpreted by our prior decisions. To be sure, Agent Morant did recite Wendy G.'s *Miranda* rights to her mother. But, if the object is to provide meaningful protection to juveniles by facilitating parental involvement, merely "imparting general information in the abstract," *Doe V,* 219 F.3d at 1017, cannot be enough. If parents are not told that they may advise and counsel their children before interrogation, the protection intended by the statute will be realized only if the parents are particularly assertive in their dealings with law enforcement. The Act's protections should not turn on such fortuities. Accordingly, we hold that, when a juvenile is in custody, the arresting officers must inform the juvenile's parents that they will be given the opportunity to advise and counsel their children before interrogation.

The confusion evident in the final exchange between Agent Morant and Wendy G.'s mother illustrates the perils of not informing parents that requests to advise and counsel their children will be honored. Wendy G.'s mother asked when and where she could see her daughter. Although this seems an obvious expression of her desire to speak with her daughter, Agent Morant did not tell her that she could do so before interrogation commenced; rather, he implied that the first opportunity to see her daughter would be at court the next morning. The government cannot seriously maintain that Agent Morant's answer was responsive to the mother's question. And such parsing of a parent's requests, when the parent has not been told that, if she so desires, she may advise and counsel her child, turns the statutory scheme into a game of hide the ball.

We conclude that the law enforcement officers failed to provide adequate notification of Wendy G.'s rights to her mother.

## C.

### Due Process and Statutory Prejudice

 The deficiencies in parental notification in this case do not rise to the level of a due process violation. *See RRA–A,* 229 F.3d at 746 ("interrogation without parental notice does not provide a basis for suppressing the resulting confession on due process grounds"). Wendy G. does not assert the contrary.

But even "[i]f the statutory violations did not rise to the level of constitutional violations," if they "nonetheless prejudiced [the juvenile], we have discretion to reverse or to order more limited remedies so as to ensure that [juveniles'] rights are safeguarded and the will of Congress is not thwarted." *RRA–A,* 229 F.3d at 747 (quoting *Doe I,* 862 F.2d at 780–781). "Suppression of the statements may be appropriate if the violation was not harmless to the juvenile beyond a reasonable doubt." *Doe V,* 219 F.3d at 1017.

"We first inquire as to whether the violation was a cause of the confession." *RRA–A,* 229 F.3d at 747 (internal quotations and citations omitted). "If so, we then look to the prejudice caused *by* the

confession." *Id.* (internal quotations and citations omitted) (emphasis in original).

The district court made an explicit finding that the government had not shown beyond a reasonable doubt that the allegedly deficient notification had not caused Wendy G. to confess. This finding was not clearly erroneous. Wendy G. testified that, if her mother had told her not to waive her rights, she would not have confessed. And-although the district court sustained the government's objection to such testimony from Wendy G.'s mother-defense counsel proffered that, if Wendy G.'s mother were permitted to testify on the issue of prejudice, she would have testified that she would have sought to prevent her daughter from answering any questions without an attorney. We have little difficulty, under the circumstances, in concluding that the violation of § 5033 caused Wendy G.'s confession. With respect to prejudice, Wendy G. entered a conditional plea immediately after the district court ruled that her statements would not be suppressed. Wendy G.'s confession was highly prejudicial and should have been suppressed.

## CONCLUSION

For the foregoing reasons, the district court's order denying the motion to suppress is REVERSED, the adjudication of delinquency is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.